Elvis **BLACK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–83–0297–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 16, 1984.

Randy Schaffer, Houston, for appellant.

Calvin A. Hartmann, Houston, for appellee.

Before JACK SMITH, DUGGAN and BULLOCK, JJ.

## OPINION

JACK SMITH, Justice.

The jury found the appellant guilty of murder and assessed his punishment at twenty-five years confinement. A previous appellate affirmation of his conviction was set aside when the Texas Court of Criminal Appeals granted the appellant's application for a post-conviction writ of habeas corpus and authorized an out-of-time appeal. The basis of the writ was ineffective assistance of counsel on appeal.

In this out-of-time appeal, the appellant asserts six grounds of error. In four grounds he contends that the trial court erred in admitting incriminating oral admis-

sions and statements made by the appellant, and in two grounds he contends that the trial court erred in permitting a witness to testify about a polygraph examination and in permitting that witness to testify concerning statements made to the witness by the appellant prior to the date of the offense.

The appellant does not challenge the sufficiency of the evidence, but certain facts must be enumerated to comprehend the nature of the case.

On the night of January 31, 1979, the appellant and a friend, Tony Candelari, met at the H and R Lounge on Market Street in Harris County to drink beer. Candelari testified that the appellant was intoxicated from liquor and drugs. The two then left the lounge and went to the appellant's sister's house, where the appellant and his brother Wayne had a fight. The appellant and Candelari then returned to the lounge, and from there went to the B and C Lounge, where they met Gene Mercer. Mercer was intoxicated and was attempting to give money away. Candelari accepted $5.00 from Mercer. The appellant and Candelari then left the lounge and went to Candelari's house. The appellant wanted to go back to the lounge and "roll" Mercer, but Candelari refused because he was expecting a female companion at his home. However, Candelari allowed the appellant to take his car. When the appellant returned, he told Candelari that he had met with Mercer, had taken him for a ride, and shot him with a .25 caliber pistol. The appellant told Candelari that he had disposed of the gun in a bayou. Shortly thereafter, the appellant borrowed Candelari's pocket knife and left to make sure that Mercer was dead. The next morning, Candelari found a bullet hole in his car and patched it with a steel filler.

On the morning of February 1, the body of Gene Mercer was found on the side of a road in Channelview, Harris County. Money was lying on the ground near the bloody body, which had knife and gunshot wounds. Although seven gunshot wounds were found, the investigators recovered only five .25 caliber automatic bullets from the body.

Detective Hendricks of the Harris County Sheriff's Department testified that on the day Mercer's body was found, he was told by Sergeant Wilks of his department that the appellant's brother, Wayne Black, had called the police. He informed them that the appellant was carrying a .25 caliber automatic pistol and that he was worried about what his brother would do with the gun. He gave the police a description of the automobile that his brother and Candelari were driving. As a result of this information, surveillance was set up at the appellant's apartment. The police later saw the appellant get into the described vehicle, and while they were following the appellant, he began to commit traffic violations, including driving on the wrong side of the road, speeding, running stop signs, and cutting off his headlights. The police stopped the appellant and arrested him for traffic violations and suspicion of murder.

The police gave the appellant his *Miranda* warnings, and the appellant waived his right to counsel. He was cooperative and gave the police permission to search his apartment. On making the search, the police did not find a .25 caliber pistol or a knife that could have been used in the murder. Appellant was then taken to police headquarters in Houston, as was Candelari, who had been arrested at work.

The police also obtained consent to search the automobile which the appellant had been using, but no weapons or other items connected with the crime could be found. The police then obtained the agreement of the appellant and Candelari to take polygraph tests. These tests were administered by Morris Covin, who owned a private business in which he gave such examinations. Examination results showed deception by the appellant on his knowledge of the murder and the weapons, and the same deception by Candelari. No tape recordings were made of the examinations.

Detective Brown testified that after the appellant and Candelari had taken their polygraph examinations, the appellant oral-

ly confessed to shooting Gene Mercer. When Candelari became aware that the appellant had confessed, he made a written statement as to his knowledge of the facts in the case. He later showed the police a spot on his car where he had patched a bullet hole. At this time the police again searched his car, and found a .25 caliber bullet.

▪ The State initially suggests that since there is an outstanding mandate of affirmance by the Fourteenth Court of Appeals, there is a jurisdictional question in the present case. We disagree with this contention because the Court of Criminal Appeals has the authority to grant relief as a result of post-conviction writ of habeas corpus. *Ex parte Ybarra*, 629 S.W.2d 943 (Tex.Crim.App.1982). The effect of granting the post-conviction writ of habeas corpus was to set aside the mandate of the Fourteenth Court of Appeals because the appellant had ineffective assistance of counsel in that appeal. The result of setting aside the mandate has been the appointment of new counsel to effect a delayed or out-of-time appeal to this court. *Ex parte Castanuela*, 435 S.W.2d 145 (Tex. Crim.App.1968). Since the Fourteenth Court of Appeals and this Court, the First Court of Appeals, equalize our dockets pursuant to authority extended under Tex.Rev. Civ.Stat.Ann. art. 1817a (Vernon Supp. 1984), the fact that the present appeal comes to the First Court of Appeals presents no jurisdictional problem.

▪ In his first ground of error, the appellant alleges that his arrest was illegal because he was arrested for "suspicion of murder" without probable cause. He asserts that his arrest was in violation of the fourth and fourteenth amendments to the United States Constitution and in violation of art. 1, sec. 9 of the Texas Constitution.

The State contends that the appellant's arrest was valid because he was arrested for traffic violations as well as for suspicion of murder.

The record reflects that surveillance was commenced on the appellant after his brother, Wayne, had reported to the police that the appellant had stolen a .25 caliber automatic gun from the Hole in the Wall Lounge. The police were aware that Gene Mercer had been killed with a .25 caliber automatic gun. The police testified that when they began to follow the appellant, he committed several traffic violations, including driving on the wrong side of the road, speeding, running stop signs and cutting off his headlights. Sergeant Wilks testified that the appellant was trying to elude the police.

In the instant case, since the appellant was arrested without a warrant, the State had the burden of proving the legality of the arrest. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Hooper v. State*, 533 S.W.2d 762, 767 (Tex.Crim.App.1976) (op. on reh'g). To justify the warrantless arrest, the State had to show the existence of probable cause at the time of the arrest and the existence of circumstances which made the procuring of a warrant impractical. *Hampton v. State*, 511 S.W.2d 1 (Tex.Crim. App.1974). To show probable cause and justification for the warrantless arrest, the State offered proof that the appellant's brother had informed the police that the appellant was in possession of a stolen .25 caliber automatic gun, that the deceased had been killed with a .25 caliber automatic gun, and that the appellant, in attempting to elude the police, had committed numerous traffic violations, including turning off his lights during the course of a high speed chase. Although there is a conflict in the testimony of the police as to the exact statement that was made to the appellant when he was arrested, i.e. "you are under arrest for committing traffic violations and suspicion of murder", or "you are under arrest for suspicion of murder", we are of the opinion that the State presented sufficient evidence to show that the police had probable cause for a warrantless arrest. The appellant's first ground of error is overruled.

▪ In his second ground of error, the appellant contends that his confession

should not have been admitted after he was warned that his statements could be used for him. The record shows that on the night of February 1, 1979, the appellant and Tony Candelari were taken to Mr. Covin's office for the purpose of taking polygraph examinations. At the *Jackson v. Denno* hearing, Detective Hendricks testified he told both men if they told the truth and showed no deception on the polygraph test, they would be released. He also indicated to the two men that their statements during the course of the polygraph examination could be used for them and might be used to their advantage rather than against them. The appellant asserts that these promises induced him to make his confession, and points out that it is a well established rule of law that a confession upon an inducement by promise made or sanctioned by a person in authority is inadmissible. *Pitts v. State*, 614 S.W.2d 142 (Tex.Crim. App.1981); *Fisher v. State*, 379 S.W.2d 900 (Tex.Crim.App.1964).

The cases cited by the appellant are distinguishable from the instant case in that in those cases, the promise of benefit was made prior to the confession and no polygraph examinations were given. In the instant case, the inducing statements were made prior to the polygraph examinations. At a later time, when the confession was made, no promises or statements were made to induce the appellant to make his confession. We note that the appellant was given his *Miranda* warnings prior to his polygraph examination and also prior to making his confession. We further note that the plaintiff does not allege, nor does the record reflect, that Detective Brown made any promises to the appellant to induce the appellant to make his confession. Under these facts, the promises made to the appellant to induce him to take his polygraph examination did not "taint" nor render the appellant's confession inadmissible. *See, Collins v. State*, 171 Tex.Crim.R. 585, 352 S.W.2d 841 (1962), *cert. denied*, 369 U.S. 881, 82 S.Ct. 1152, 8 L.Ed.2d 283 (1962); *Fernandez v. State*, 172 Tex. Crim.R. 68, 353 S.W.2d 434 (1962). The

appellant's ground of error number two is overruled.

■■■ In his grounds of error three and four, the appellant contends that his oral confession, made to Detective Brown and heard by Morris Covin, was not in compliance with art. 38.22 of the Texas Code of Criminal Procedure. As a result, he asserts that the trial court committed reversible error in admitting his oral statements. Tex.Code Crim.Proc.Ann. art. 38.-22(3), governing oral confessions in Texas, states as follows:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate, has not been altered, and reflects that the accused was advised before the interrogation that the interrogation will be recorded; and

(4) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during a custodial interogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused such as the finding of secreted or stolen prop-

erty or the instrument with which he states the offense was committed.

(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpreter who is qualified and sworn as provided in Article 38.31 of this code.

Generally, oral confessions by defendants in police custody are not admissible at trial. *McGilvery v. State*, 533 S.W.2d 24 (Tex.Crim.App.1976). Art. 38.22(3)(c) provides an exception to the rule. When a defendant's in-custody statement of facts or circumstances conduce to establish his guilt and is found to be true, the statute permits introduction of the statement at trial. The stated facts or circumstances must be shown to conduce and to establish guilt by showing that the statement led to the discovery of items of information not previously discovered by the State, and such new information must be incriminating. *Id.* at 26. *See also, Chase v. State*, 508 S.W.2d 605 (Tex.Crim.App.1974), *cert. denied*, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974). It is only necessary that one statement in the oral confession is found to be true and conduces to establish guilt. It is not necessary that an oral confession, in each of its parts, conduces to establish guilt. *Marini v. State*, 593 S.W.2d 709 (Tex.Crim.App.1980).

In the instant case, the appellant orally confessed to Detective Brown that he had shot Mercer two times while they were in the car. After Candelari became aware of this confession, he told the police that the appellant had asked to borrow his car to "roll" Mercer. A police search of Candelari's car revealed nothing incriminating, but when Candelari showed them where a bullet hole had been patched with liquid steel in the door of his car, a .25 caliber bullet was discovered. At trial, an expert from the Department of Public Safety testified that the bullet found in the car was fired from the same weapon as the bullets which had been recovered from the deceased's body.

The appellant's oral confession contained sufficient information to lead the police to further question Candelari. Up to this time, the police had been unable to find anything in the car to establish appellant's guilt. A further interrogation of Candelari led the police to newly discovered evidence establishing appellant's guilt. Article 38.-22(3)(c) states that the requirement of a recording in sec. (a) does not apply where there are facts or circumstances that are true and conduce to establish the guilt of the accused. We hold that the trial court properly admitted the appellant's oral confession because it established facts that were true and led to the discovery of new evidence which was material in establishing the guilt of the accused. The appellant's grounds of error three and four are overruled.

 In his ground of error number five, the appellant contends that the trial court erred in failing to grant a mistrial when Tony Candelari testified that police officers took him to take a polygraph examination. The testimony between the prosecutor and Candelari about which the appellant complains is as follows:

Q. Did they arrest you?
A. Yes, sir. Well, they took me to take a polygraph examination.

Although the State urges that the appellant did not preserve error by obtaining a ruling on his motion for mistrial, the record reflects that the error was preserved at a later stage of the trial when the following exchange took place:

MR. LAMBRIGHT: There are two motions for mistrial pending.

THE COURT: One motion is on the question of—

MR. LAMBRIGHT: Polygraph.

THE COURT: Polygraph and in the light of your motion not to refer to it, that it might bring back the memories of the jury to it that they may have already forgotten, I'm inclined to follow your motion and grant your motion.

MR. LAMBRIGHT: For mistrial?

THE COURT: On the question of polygraph being used by the witness that testified to that fact.

MR. LAMBRIGHT: In other words, the motion for mistrial is granted?

THE COURT: *I'm overruling your motion for mistrial, but grant your motion not to instruct the jury further.*

MR. LAMBRIGHT: And my motion for mistrial on the extraneous offense?

THE COURT: Overrule that motion and instruct the jury not to consider this question for any purpose.

MR. LAMBRIGHT: Note my exception. (emphasis added).

Prior to the overruling of the motion for mistrial the appellant's attorney had expressed a concern that the instruction to disregard would be inadequate and would tend to aggravate the situation in the jury's mind. Pursuant to appellant's counsel's suggestion, the trial judge did not instruct the jury to disregard, but asked the attorneys to warn their witnesses not to mention the polygraph again. The parties agreed not to mention that the appellant was in the private offices of Morris Covin.

The courts have been particularly sensitive to potential sources of error through polygraph examinations. *Romero v. State,* 493 S.W.2d 206 (Tex.Crim.App.1973). Results of polygraph examinations are not admissible in Texas by either party in a criminal prosecution. *Renesto v. State,* 452 S.W.2d 498 (Tex.Crim.App.1970). Ordinarily, if a prosecutor inquires of a defendant whether he took a lie detector test and the answer is affirmative, a mistrial will be granted. *Nichols v. State,* 378 S.W.2d 335 (Tex.Crim.App.1964). On the other hand, where a prosecution witness refers to other people taking polygraph examinations, and not the defendant, it is not reversible error. *Charles v. State,* 424 S.W.2d 909 (Tex.Crim.App.1967); *cert. denied,* 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401 (1968). Furthermore, it has been held that when an officer testifies that the accused has been subjected to a polygraph test, where his statement is unresponsive, the test results are not revealed, and the jury was instructed to disregard the remark, such does not constitute reversible error. *Paredes v. State,* 368 S.W.2d 620 (Tex.Crim.App.1963).

In the instant case Candelari's nonresponsive answer concerning his polygraph examination did not reveal the results of the examination. There was no testimony alluding to the fact that the appellant had also taken a polygraph examination. In view of the fact that appellant's counsel was of the opinion that an instruction to disregard Candelari's remarks would do more harm than good, and he asked the trial court not to instruct the jury, we are of the opinion that the appellant is not now in a position to complain about the alleged error. Appellant's ground of error number five is overruled.

 In ground of error six, the appellant complains that the trial court erred in allowing Candelari to testify that the appellant had made statements prior to the date of the offense about robbing, injuring or killing people, and destroying businesses. He contends that he was entitled to be tried on the accusation made in the State's pleadings and not for collateral crimes or for being a criminal generally. He complains of the following testimony elicited by the prosecutor:

Q. Will you tell the jury how long it was that Elvis had been depressed?

A. Ever since he moved in with me.

Q. And that would have been in October?

A. Yes, sir.

Q. Were there any—Mr. Lambright asked you about whether or not you had been making statements that night to other people about rolling people or injuring people or killing people, do you recall those statements?

A. Yes, sir.

Q. Had Elvis been making any statements like that during the time that you lived with him there?

A. Yes, sir.

MR. LAMBRIGHT: We are going to object to all of this. May we approach the bench?

(WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT THE BENCH).

MR. LAMBRIGHT: If we are going to go back to October—

THE COURT: Let's narrow it down to some specific time within the range of the offense.

MR. LAMBRIGHT: February 1st or 2nd.

MR. MORRIS: I think we are able to show this to intent. It is the line of questioning.

THE COURT: Within reason.

MR. LAMBRIGHT: I would like to have some sort of specific date in mind so we can have a specific date in question. Not a month before or six months before or during the entire time they lived together and I'll object to it. It is extraneous to anything before this Court. Anything that was said prior to February 1st of either one of these two men.

THE COURT: You are overruled. If he can show within any reasonable proximity of the alleged offense.

MR. LAMBRIGHT: By reasonable, what do you mean?

THE COURT: Within some time prior to the killing.

MR. LAMBRIGHT: That's what I'm getting at. How much prior?

MR. MORRIS: I don't think the Court should be pinned down.

THE COURT: I think the man has right to go into it. If he can show it was near the alleged homicide, I think it is admissible.

MR. LAMBRIGHT: Even if it's not?

THE COURT: Your objection is overruled.

MR. LAMBRIGHT: Note my exception.

(WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT THE JURY PANEL.)

REDIRECT EXAMINATION CONTINUED QUESTIONS BY MR. MORRIS:

Q. Do you recall Elvis's statements along this same line?

A. Yes, sir.

Q. Will you tell the jury prior to the date of the killing there within the say a week or two prior to the date there, what kind of statements was he making as far as destructiveness and injuring?

MR. LAMBRIGHT: May I have a running objection?

THE COURT: You may have.

MR. LAMBRIGHT: To this entire line of testimony?

THE COURT: You may have it.

MR. LAMBRIGHT: Thank you, sir.

THE WITNESS: May I answer that?

Q. Yes sir.

A. *Well he was always wanting to destroy something.*

Q. *In what manner?*

A. *Making bombs, shooting up the place of business. I don't know. There has been so many. It seems he was fairly much into demolition. Military style or whatever. He was fairly preoccupied with bombs.*

Q. Now were you talking about that you were going to roll somebody that night?

A. Yes, sir.

Q. Is there any statements by Elvis in the last short period before this murder took place in connection with rolling people?

A. Yes, sir.

Q. What was that?

A. Well, he was the first one to inquire as to Floyd West financial statement. I think it was about a week prior to this. He was asking me if Floyd West had any money and I believe I told him that if he did it was in the whiskey bottle sitting in front of him. (emphasis added).

An accused is entitled to be tried not as a criminal generally, but upon the charge

against him. *Bush v. State,* 628 S.W.2d 441 (Tex.Crim.App.1982). Evidence of other crimes committed by the accused may be admitted only where such evidence is material and relevant to the contested issue in the case. *Ortega v. State,* 626 S.W.2d 746 (Tex.Crim.App.1981). The test for determining the admissibility of such evidence is whether the probative value of the evidence outweighs its inflammatory aspects, if any; and its admissibility lies within the sound discretion of the trial judge. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim. App.1972). The trial court's decision upon the admissibility of evidence will not be reversed on appeal unless a clear abuse of discretion is shown. *Hernandez v. State,* 484 S.W.2d 754 (Tex.Crim.App.1972).

In the instant case, the appellant's complaint is that the trial court permitted Candelari to testify about extraneous offenses committed by the appellant. A close examination of the testimony reveals that Candelari did not testify about any extraneous offenses committed by the appellant, but only testified about the appellant's mental state and statements made by the appellant prior to the incident involved in this case. Testimony concerning a defendant's motive, intent, or design is admissible. *Etchieson v. State,* 574 S.W.2d 753 (Tex.Crim. App.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). Evidence of motivation is one kind of evidence which tends to establish proof of an alleged offense. *Porter v. State,* 623 S.W.2d 374 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Since the complained of testimony did not contain any statements of extraneous offenses committed by the appellant and tended to show the state of mind of the appellant shortly before the killing of Mercer, we are of the opinion that the facts elicited were relevant to prove the appellant's state of mind shortly before the commission of the offense. The appellant's sixth ground of error is overruled.

The judgment of the trial court is affirmed.