Elvis BLACK, Appellant,

v.

The STATE of Texas, Appellee.

No. 1046–84.

Court of Criminal Appeals of Texas.

En Banc.

July 1, 1987.

Randy Schaffer, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough and Ned Morris, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was charged with murder. Upon his plea of not guilty a jury found him guilty and assessed punishment at twenty-five years imprisonment. On direct appeal, appellant's conviction was affirmed in an unreported per curiam opinion of the Fourteenth Court of Appeals. *Black v. State*, Tex.App.—Houston [Fourteenth District], No. B14–81–047–CR, delivered No-

vember 27, 1981. Appellant applied to this Court for a post-conviction writ of habeas corpus contending that he received ineffective assistance of counsel on direct appeal. We granted appellant's application and allowed him an out-of-time appeal. *Ex parte Black*, (Tex.Cr.App. No. 12,464, delivered April 13, 1983). On his second appeal the First Court of Appeals affirmed appellant's conviction. *Black v. State*, 677 S.W.2d 150 (Tex.App.—Houston [First District] 1984). This Court granted the appellant's petition for discretionary review to determine whether appellant's arrest was a lawful warrantless arrest and whether appellant's oral confession should have been admitted at trial. We will reverse.

In appellant's first ground for review he contends that the Court of Appeals erred in holding that appellant's oral admissions were the result of a lawful warrantless arrest. A review of the facts of the case is appropriate before addressing this ground.

On the morning of February 1, 1979, Sergeant William H. Wilks of the Harris County Sheriff's Department received a phone call from Emmett Wayne Black, appellant's brother. Among other things, Wayne told Wilks that appellant had a .25 caliber automatic weapon which was allegedly stolen from a local lounge. Later that same morning, the body of Gene Mercer was discovered. An autopsy revealed that the deceased had seven gunshot wounds. Five .25 caliber bullets were recovered from the deceased's body. Sergeant Wilks gave the officer in charge of the murder, Detective K.B. Hendricks, the information provided by Wayne Black. In an interview with Wayne, Detective Hendricks obtained descriptions of appellant, appellant's roommate Anthony Candelari, and Candelari's automobile.

Based upon the information received from Wayne Black, Detective Troy Brown set up surveillance across the street from appellant's apartment. He was joined later by Detective Hendricks and Detective Jim Waller. Appellant was seen leaving his apartment in Candelari's car. Desiring to question appellant about the murder, detectives Brown and Waller followed appellant in an unmarked police car. Detective Hendricks continued surveillance of the apartment. While following appellant Brown and Waller observed him commit several violations of the traffic laws and noticed that there was not a light over the license plate of the car. Appellant pulled into a parking lot and Brown pulled in behind him and placed him under arrest. At the hearing on the admissibility of appellant's oral confession Detective Brown testified as follows:

"Q. Did you tell him he was being placed under arrest?

"A. At the time he was removed from the vehicle?

"Q. Yes, sir.

"A. We wanted to talk to him in reference to a homicide case and at the time we were on the stakeout and he got in the vehicle, we followed him for some distance and in the process he committed several traffic violations. Running without headlights. Running stop signs. Driving on the wrong side of the road.

"Q. You told him you wanted him for questioning for those offenses?

"A. No, sir. We told him we want to talk to him in reference to this homicide case."

During the trial Detective Waller gave the following account of appellant's arrest:

"Q. What happened when he (appellant) stopped the car?

"A. He exited from the vehicle.

"Q. Did he attempt to run?

"A. No, sir.

"Q. What did he do?

"A. He proceeded to walk back towards our car.

"Q. He walked back towards your car?

"A. Yes, sir.

"Q. He knew you were there?

"A. I'm sure he did.

"Q. Okay. At that time was there some effort to identify yourselves to him as being peace officers?

"A. Yes, sir. It was.

"Q. And did you at that time form the opinion that you were going to arrest

him? Or were you of the opinion that you weren't going to arrest him?

"A. I had no opinion at that time.

"Q. Did Mr. Brown make some statement in that regard?

"Q. Yes, he did.

"Q. What did he say?

"A. He advised Mr. Black he was under arrest.

"Q. Didn't he tell him what he was under arrest for?

"A. Yes, sir.

"Q. What was that?

"A. Suspicion of murder.

"Q. And was there some discussion about traffic violations at that point?

"A. I believe I heard Mr. Brown say something in regard to the traffic violations, but I'm not sure what it was about."

After reading appellant his rights the car was searched but nothing was found. Appellant consented to a search of his apartment and again, nothing was recovered. Appellant was taken to the Harris County Sheriff's Office and interrogated. Meanwhile Anthony Candelari was arrested at his place of employment by Detective Brown. Candelari was also taken to the Harris County Sheriff's Office and interrogated separately.

Both appellant and Candelari consented to a polygraph examination, and were taken to the office of Morris Covin, a polygraph examiner. Covin testified at the hearing that he warned appellant that the polygraph was purely voluntary and of his own free will, that no one could force him to take it, that he did not have to answer the questions, and, if he did, such answers could and probably would be used against him at trial, if he could not afford an attorney, one would be appointed for him, and finally, that he could terminate the interview at any time. Appellant stated that he understood the warnings. Two polygraph examinations were given to appellant and were monitored by closed circuit television but were not electronically recorded. Both polygraph tests showed deception on the part of appellant. Covin informed appellant of this, and appellant waited in another examining room with Officer Brown while Covin gave a polygraph examination to Candelari.

After giving Candelari his polygraph examination, Covin monitored Brown's interrogation of appellant. Covin heard appellant say that he remembered shooting the deceased twice while the deceased was in a car. Covin then went to the room where Candelari was and told him of appellant's confession. Candelari admitted that he had known that appellant had shot the deceased, and that appellant had borrowed his knife to kill the deceased.

Detectives then searched Candelari's car at the police vehicle compound to find any evidence of the murder. After about ten or fifteen minutes of unsuccessful searching, Detective Waller got Candelari who showed the detective where the bullet hole had been patched with "Liquid Steel." The detectives took apart the car door and found a .25 caliber bullet. Appellant's oral confession was admitted into evidence, over his timely objection, on the basis that it led to the recovery of this bullet.

On appeal to the First Court of Appeals, appellant argued that his warrantless arrest was unlawful. Appellant contended that the police officers lacked probable cause to arrest him for murder in violation of the Fourth and Fourteenth Amendments to the United State Constitution and Article I, Section 9 of the Texas Constitution. Appellant claimed that the arrest for traffic violations was a mere pretext for the arrest for suspicion of murder. In response to these claims the Court of Appeals concluded that there was probable cause for a warrantless arrest of appellant. In reaching this conclusion, the opinion states:

"To show probable cause and justification for the warrantless arrest, the State offered proof that the appellant's brother had informed the police that the appellant was in possession of a stolen .25 caliber automatic gun, that the deceased had been killed with a .25 caliber automatic gun, and that the appellant, in attempting to elude the police had committed numerous traffic violations...."

*Black v. State*, 677 S.W.2d 150, 154 (Tex. App.—Houston [First District] 1984). The issue of pretext arrest was not separately addressed by the Court of Appeals.

In his petition for discretionary review appellant complains that there was not probable cause to arrest him for murder and that the Court of Appeals erred in not finding that the arrest for traffic violations was a pretext arrest. In order to decide if appellant's claims are valid we must consider these two issues separately. First we must decide whether there was probable cause to arrest appellant for the murder of the deceased. If that question is answered in the affirmative we must then determine if exigent circumstances justified the warrantless arrest. *Hoag v. State*, 728 S.W.2d 375 (Tex.Cr.App.1987). If either of these questions is answered in the negative, only then will we proceed to the pretext search allegation.

The standards for determining whether there was probable cause to arrest without a warrant are at least as stringent as the standards required when a magistrate determines probable cause before issuing a warrant. *Wilson v. State*, 621 S.W.2d 799 (Tex.Cr.App.1981). In order to establish probable cause to arrest the officer must demonstrate that he had enough information to warrant a man of reasonable caution in believing that a felony had been committed. *Wilson*, supra. Mere suspicion that the person arrested committed a crime is not sufficient to justify a warrantless arrest. *Gill v. State*, 134 Tex.Cr.R. 363, 115 S.W.2d 923 (App.1938).

For example this Court found in *Townsley v. State*, 652 S.W.2d 791 (Tex.Cr.App. 1983), that at the time the defendant was initially arrested, the police lacked probable cause to make the arrest. The defendant was charged with murdering his girlfriend by forcing her to ingest ether. Portions of the deceased's hair had been cut and left on her pillow. Acid had been poured on her face, disfiguring it, and her pubic hair had been set on fire. The police knew that cut hair found on defendant's boots matched the cut hair found on the deceased's pillow, and that the discoloration on defendant's boots possibly was caused by the substance poured on the deceased's face. Defendant had admitted that he was at the scene of the crime with the deceased on the night she died, and there were discrepancies between defendant's statements and those of his mother. Additionally the police noted that the crime was of a highly personalized nature and that the defendant had an intimate relationship with the deceased. Despite all of this information, we held that there was not probable cause to arrest defendant.

In *Wilson*, supra, this Court also found that the police did not have probable cause to make a warrantless arrest. In that case, the police had been told by an informer that defendant would be going to a phencyclidine laboratory. The informer stated that the defendant would be manufacturing phencyclidine at the laboratory and that he would be leaving the laboratory with the phencyclidine in a white pick-up truck. We held that this information was not enough to establish probable cause to arrest defendant.

In contrast to the *Wilson* and the *Townsley* cases, the officers in the instant case had far less information to establish probable cause. All the officers knew was that the appellant had a gun with the same caliber bullet as found in the deceased's body, that appellant had allegedly burglarized a building near the murder scene, and that appellant lived near the murder scene. This information was far from enough to establish probable cause to arrest appellant.

Having decided that the police could not have arrested appellant for murder, we bypass the exigent circumstances question and proceed to the question of whether appellant's arrest for traffic violations was used as a pretext to either question him about or search for evidence of a murder. When an arrest is made illegally, evidence discovered pursuant to that arrest is not admissible at trial. *Wilson*, supra at 805. *Bell v. State* 724 S.W.2d 780 (Tex.Cr.App. 1986) An arrest for one crime is not permitted to be used as a pretext to search for evidence of another. *United States v. Lef-*

*kowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). When an arrest is used as a pretext, it is an illegal arrest and evidence discovered as a result of it may not be used at trial.

This Court recognized the issue of pretext arrest in *Gutierrez v. State,* 502 S.W.2d 746 (Tex.Cr.App.1973) and in *Mc-Donald v. State,* 415 S.W.2d 201 (Tex.Cr. App.1967). In *Gutierrez,* supra, the arresting officers testified that they arrested defendant for public intoxication after observing that his eyes were bloodshot, he was unsteady on his feet, his speech was slurred, and he smelled of alcohol. It was only after the defendant was arrested that they learned he was wanted for questioning about a murder. The officers took defendant to the police station where he later confessed to the murder. The defendant testified that he was not arrested until after the officers learned he was wanted in connection with the murder investigation. The defendant argued that his confession was the result of a pretext arrest and should be suppressed. The trial judge refused to suppress the confession. In reviewing the trial court's decision this Court stated:

> "The record from the pre-trial hearing is lengthy, and contains ample evidence to support the findings of the trial court, who, as trier of fact, was free to disbelieve appellant's testimony.... There was sufficient evidence for the court to conclude that the arrest of appellant was

legal, and not a pretext to retain him for questioning...."
*Gutierrez,* supra at 748.

In *McDonald,* supra, the defendant was arrested for vagrancy. The arresting officers searched defendant after his arrest and found stolen property. Both officers testified that when they arrested defendant they had no information or report of any stolen property. It was defendant's contention that the stolen property was recovered as the result of a pretext arrest. This Court held that "the record does not support appellant's contention that his arrest for vagrancy was made by the officers as a pretext to search." *McDonald,* supra at 202.[1]

In contrast to the above cases, in the instant case the arresting officers admitted that they knew before they arrested appellant that he was a suspect in a murder investigation. They also admitted that they stopped him *to question him about the murder.*

In *Amador-Gonzalez v. United States,* 391 F.2d 308 (5th Cir.1968) the Fifth Circuit held that the defendant's arrest for traffic violations was used as a pretext to search for drugs. In determining whether this was a pretext arrest the Court noted the following:

1. The defendant was under surveillance because the officer suspected he was involved in a narcotics transaction.
2. The officer admitted that the real reason he wanted to stop the defendant was to search for narcotics.

---

1. In other cases this Court simply ignored the contention that a particular automobile search was unjustified under the pretext search doctrine. Twenty years ago in *Adair v. State,* 427 S.W.2d 67, 71, 72 (Tex.Cr.App.1967), Judge Onion, in a stinging dissent joined by Judge Morrison, opined:

   "It is well established, though, that while an arrest may be lawful, the proceeds of an incidental search will be inadmissible if the court finds the arrest was merely a convenient excuse or pretext for conducting the search. [Citations omitted]

   Few motorists can drive any substantial distance without committing some minor infraction of the traffic codes. [Citation omitted] Therefore, peace officers find the traffic violation the most convenient front since it pro-

   vides the greatest potential for arrest. Consequently, an officer lacking sufficient cause to arrest one suspected of a criminal offense, or about whom he is merely suspicious, will frequently look to traffic laws as a means of stopping and searching the person and his vehicle for evidence of a more serious offense. In such instances ... the search fails because it is based upon a sham or pretext arrest. [Citations omitted].

   \* \* \* \* \* \*

   If warrantless arrests for traffic offenses are used to search those merely suspected of crime or about whom the officer is merely suspicious, then mockery is made out of the Fourth Amendment and its guarantees. It is our duty to detect and prevent such misuse of the legal processes."

3. The officer was a narcotics officer who did not normally make traffic arrests and had no ticket book.

4. The traffic tickets were not written out at the time of the arrest.

5. There was a delay between the officer's observation of the traffic offenses and the stop.

When considered together these factors clearly indicate that the traffic violations were used as a pretext to search the defendant and his car for drugs.

In contrast to *Amador-Gonzalez*, supra, this Court found the arrest and search in *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App. 1978) was not a pretext to search for evidence of another crime. In *Evers*, supra, the officer pulled the defendant over because his license plates had expired. After the defendant was given a ticket, he accelerated rapidly, spraying the officer with gravel and dirt. Defendant was then arrested for reckless driving and the car was inventoried. The officer found a gun in the car. The Court found significant the fact that before the officer arrested the defendant, he had no suspicions that defendant was unlawfully carrying a weapon. Once arrested and removed from his car, the valid caretaking function recognized in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) controlled.

There are marked differences between *Amador-Gonzalez*, supra, where there was a pretext arrest and *Evers*, supra, where there was not. In *Amador-Gonzalez*, supra, the officer suspected the defendant of drug trafficking and had the defendant under surveillance. The traffic violations were only the excuse used by the officer to search the car. In *Evers*, supra, the defendant was arrested for another crime committed after he was stopped for traffic violations and before the officer had any idea that the defendant had a gun.

When compared with the above cases, it is apparent that the instant case fits the criteria for a pretext arrest set out in *Amador-Gonzalez*, supra. In the instant case appellant was under surveillance because he was suspected of murdering the deceased. The officer making the arrest *admitted that the reason appellant was arrested was to question him about the homicide.* The officers were homicide detectives, and if they were in the habit of enforcing traffic laws or of writing traffic tickets, there is nothing in the record indicating any were written on this occasion. The facts show that the officers did not try to get a warrant, but simply used the traffic violations as a pretext to get around the warrant requirement. Appellant's detention was, therefore, illegal.[2]

Appellant's oral confession was made after he was illegally arrested. The confession should have been excluded unless there were intervening events that broke the causal connection between the illegal arrest and the confession. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed. 2d 416 (1975); *Self v. State*, 709 S.W.2d 662 (Tex.Cr.App.1986); *Bell*, supra. This case is therefore remanded to the Court of Appeals to determine whether appellant's confession should be excluded as a product of the illegal arrest in light of the factors set out in *Bell*, supra.

The decision of the Court of Appeals is reversed and the case is remanded to the Court of Appeals.

WHITE, J., concurs in the result.

McCORMICK, Judge, dissenting.

Because I cannot agree that the stop of appellant was based on a mere pretext, I must register my dissent. Under the facts presented here, the officers had more than ample grounds to arrest the appellant for numerous traffic violations committed in their presence.

The majority today requires police officers to close their eyes to illegal conduct and not arrest a defendant if there exists

---

**2.** To the extent that *Bain v. State*, 677 S.W.2d 51 (Tex.Cr.App.1984) and *Dodson v. State*, 646 S.W. 2d 177 (Tex.Cr.App.1983) (opinion on State's Motion for Rehearing) stand for the proposition that there can never be a pretext arrest when the defendant actually violated the traffic laws, they are overruled.

probable cause to arrest for another offense for which an arrest warrant is required. To arrive at a solution to their perceived problem, the majority casually overrules *Bain v. State,* 677 S.W.2d 51 (Tex.Cr.App.1984), and *Dodson v. State,* 646 S.W.2d 177 (Tex.Cr.App.1980), simply on the mere pretext that the instant arrest was illegal.

This Court should not ride roughshod over the statutes of this State nor in such a helter-skelter manner flippantly overrule established precedent which stands in the path of an objective.

The majority has today given new meaning to the term "independent judiciary."

I dissent.

W.C. DAVIS, J., joins in this dissent.

ONION, Presiding Judge, concurring and dissenting.

I agree that appellant's oral confession was made after he was illegally arrested *under the circumstances of this case.* I dissent, however, to the overruling of *Bain v. State,* 677 S.W.2d 51 (Tex.Cr.App.1984), and *Dodson v. State,* 646 S.W.2d 177 (Tex. Cr.App.1980). I would distinguish those cases. I further dissent, however, to the remand to the Court of Appeals. We should apply *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Self v. State,* 709 S.W.2d 662 (Tex.Cr.App. 1986); *Bell v. State,* 724 S.W.2d 780 (Tex. Cr.App.1986), in this Court. What the majority does is not judicial economy. Once the Court of Appeals disposes of this piecemeal matter, it undoubtedly will be back before this Court. Such rotation of cases between courts does not add up to judicial common sense or contribute to the finality of judgments in criminal cases.

TEAGUE, J., joins this opinion.