**Larry Dale HAMILTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1106–89.

Court of Criminal Appeals of Texas, En Banc.

May 6, 1992.

Richard Alley, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Helen T. Dhooghe, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty. and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTIONS FOR REHEARING AFTER REFUSAL OF STATE'S PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A Tarrant County jury found appellant guilty of the offense of possession of less than 28 grams of amphetamine, a felony of the third degree in violation of Article 4476–15, Sections 4.02(c)(3) and 4.041(a) and (b), V.A.C.S., the provisions of the Texas Controlled Substances Act in effect at the time of appellant's offense.[1] After finding that appellant committed this offense enhanced by three prior felony convictions, as alleged by the State in its indictment of appellant, the trial court sentenced appellant to a term of imprisonment of 25 years pursuant to V.T.C.A., Penal Code, Section 12.42(d). Appellant filed a timely notice of appeal from his conviction and sentence. In a published opinion, the Fort Worth Court of Appeals reversed appellant's conviction on the ground that the trial court committed reversible error in denying appellant's request to instruct the jury on pretext arrests pursuant to Article 38.23, V.A.C.C.P. *Hamilton v. State*, 772 S.W.2d 571 (Tex.App.–Fort Worth 1989). We refused petitions for discretionary review filed by the offices of the Tarrant County District Attorney and the State Prosecuting Attorney, but subsequently granted their motions for rehearing. For the reasons stated below, we now reverse the decision and affirm appellant's conviction and sentence.

Officer Mika Jackson of the Fort Worth Police Department testified that on the afternoon of May 5, 1986, she and Officer J.D. Ross were driving in a marked patrol car on Jeff Street in Fort Worth. The officers noticed a 1984 gray Chrysler Laser parked on the wrong side of the street in front of 2821 Jeff Street. The Laser caught Officer Jackson's attention because she had been patrolling that area for over a year and knew that no one on Jeff Street owned it. In addition, the Laser was a "sports" type car which was out of charac-

---

1. These statutory provisions are now codified in Texas Health and Safety Code Annotated, Sec- tions 481.103(a)(3) and 481.113(a) and (b) (West 1992), respectively.

ter for that neighborhood.[2] The officers then decided to run a records check to determine if the Laser had been stolen.[3] The check revealed that the registered owner of the Laser was P.K. Insulation. After learning that the Laser was owned by a business, rather than an individual, the officers decided to drive by the Laser again. As the officers drove by, now travelling east on Jeff Street, they saw appellant leave the house at 2821 Jeff Street. The officers then circled the area and were driving west on Jeff Street when they saw the Laser heading toward them in their lane. The officers had to stop their car to avoid hitting the Laser. Officer Ross motioned to appellant and told him to pull over.

After appellant pulled over, Officer Jackson told him to step out of his car and show her his driver's license and proof of insurance. Appellant got out of the car and told Jackson that he did not have either a license or proof of insurance. Jackson then asked appellant what his name was, and appellant identified himself as Larry Wilson, but had difficulty spelling his last name for Jackson. Appellant also gave Jackson a date of birth and an address in Marlow, Oklahoma, but was unable to give Jackson a zip code or a telephone number. Jackson then attempted to obtain driver's license information on appellant using the name Larry Wilson and the date of birth appellant gave her, but was unable to do so. Jackson then asked appellant who

owned the Laser he was driving, and appellant told her that he borrowed it from a person named "Sherry." Jackson then asked appellant for the last name and address of "Sherry," but appellant could only state that she did not have a local address and was staying at a Holiday Inn in Hurst.

At this point Jackson cited appellant for the misdemeanor offenses of driving on the wrong side of the road, and failing to produce a driver's license or proof of insurance. Jackson also decided to arrest appellant and place him in jail so that he would be required to post a cash bond before he could be released. Jackson based this latter decision on the following facts: (1) appellant became very nervous when Jackson asked appellant his name, (2) appellant had difficulty spelling his last name, (3) appellant had been unable to give her a complete mailing address [4], and (4) Jackson had been unable to contact either P.K. Insulation or "Sherry" to verify the ownership of the Laser.[5] Based on these facts, Jackson also testified that it was "proper police procedure" to arrest appellant rather than simply have him sign the citations and promise to appear in court. Jackson therefore testified that she did not have the option of releasing appellant under these circumstances.[6]

After appellant was placed under arrest, Officer Ross conducted a search incident to arrest. During that search, Ross found a black leather sunglass case. Ross opened

---

2. Officer Ross also testified at trial and stated that the Laser appeared "out of place" on Jeff Street because it looked "brand new and clean."

3. Officer Ross testified at trial that he suspected the Laser to be stolen because Jeff Street was a high crime area and because he knew that the persons living at 2821 Jeff Street had previously been involved in car theft.

4. Jackson testified that the court would not accept a citation without a zip code because the postal service will not deliver mail from the court without a zip code. As stated above, appellant was unable to provide Jackson with a zip code for his Oklahoma address.

5. Jackson testified that the only working number she could obtain for P.K. Insulation was a long distance number, which she was unable to call because the City of Fort Worth would not

pay for long distance calls. Jackson also testified that she did not contact the Holiday Inn in Hurst to attempt to locate "Sherry" because appellant could not provide her with a room number.

6. With respect to the decision to arrest appellant, rather than release him on his promise to appear, Officer Ross testified at trial:

"We took him into custody because we felt—I felt that the man as (sic) lying to us about his name, because of the way he acted. We could not located (sic) anyone that owned the car, and the only other person locally that had any knowledge of the vehicle was a girl that he only knew by her first name in a motel. So at that time when we felt he would not take care of his tickets if we gave them to him so we placed him under arrest for the tickets."

the case and found a plastic baggie containing a white powdery substance, which a subsequent chemical analysis showed to be amphetamine. As Officer Ross opened the case, appellant stated that "I thought I was out of dope." After the officers placed appellant in the patrol car, he admitted that his real name was Larry Hamilton, not Larry Wilson.

After the presentation of evidence by the parties, but prior to closing arguments, appellant objected to the trial court's charge to the jury on the ground that it failed to include Defendant's Specially Requested Charge. Paragraphs III and V of the Specially Requested Charge would have instructed appellant's jury, in essence, to disregard any evidence which the jury found was obtained as a result of a pretext arrest of appellant, and return a verdict of not guilty if it found any such evidence.[7] The trial court denied appellant's requested charge. As stated previously, appellant's jury found him guilty of the offense of possession of less than 28 grams of amphetamine and the trial court sentenced him to a 25–year term of imprisonment after finding that appellant committed the offense enhanced by three prior felony convictions.

Appellant filed a timely notice of appeal from his conviction and sentence and argued on appeal that the trial court committed reversible error in refusing his requested charge on pretext arrest. Specifically, appellant argued that (1) the evidence at trial raised the issue of whether his arrest was a pretext arrest in violation of Article I, Section 9 of the Texas Constitution and (2) the trial court was therefore required by Article 38.23, V.A.C.C.P., to instruct the jury on this issue.[8] The Fort Worth Court of Appeals agreed with appellant's argument, and reversed and remanded his case to the trial court for a new trial. In reaching this result, the court relied upon this Court's decision in *Black v. State*, 739 S.W.2d 240 (Tex.Cr.App.1987), in which we found that an arrest was a pretext arrest in violation of the Fourth Amendment to the United States Constitution where the police arrested a defendant for traffic violations in order to question him about a murder for which the police did not have probable cause to arrest the defendant. The court held that it was bound by our decision in *Black*, and was therefore required to construe Article 1, Section 9 as providing at least as much protection to defendants with respect to pretext arrests as is provided under the Fourth Amendment as construed by *Black*. The court therefore rejected the State's argument, based on *United States v. Causey*, 834 F.2d 1179 (5th Cir.1987), that an arrest should not be considered to be a pretext arrest under Article 1, Section 9, as long as the police were legally authorized to make the arrest. Using the subjective intent standard of *Black*, the court

7. Paragraphs III and V read, respectively:
    "A pretext arrest is an unlawful arrest. A pretext arrest is one in which an accused person is arrested not solely for the reason of the claimed offense, but instead for the purpose of obtaining evidence of the commission of another offense.
    "Now if you find from the evidence that on the occasion in question, Larry Dale Hamilton was not arrested solely for the reason of the commission, if any, of the claimed traffic offenses, or was otherwise unlawfully arrested, and such arrest would be illegal, and if you find the facts so to be, or if you have a reasonable doubt thereof, you shall not consider the evidence, if any, derived from such arrest and introduced into evidence, and you shall then return a verdict of not guilty."

8. Article I, Section 9 of the Texas Constitution states that:
    "The people shall be secure in their persons, houses, papers and possessions, from all un-

reasonable seizures and searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."
    Article 38.23, V.A.C.C.P., as in effect at the time of appellant's offense, provided:
    "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
    "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

held that the trial court violated Article 38.23 in refusing to instruct appellant's jury on pretext arrests since the evidence at trial raised a factual issue concerning the officers' intent in arresting appellant. Specifically, the court stated that the same facts which prompted the officers to arrest appellant for the misdemeanor offenses could have caused the officers to suspect appellant of car theft and wish to question him about that offense. Finally, the court held that this violation was not harmless because appellant was entitled to have that factual question resolved by the jury.[9]

As noted previously, the offices of the Tarrant County District Attorney and the State Prosecuting Attorney (the "State") filed petitions for review from the Court of Appeals' decision. In those petitions, the State requested us to review the following legal issues: (1) whether *Black v. State,* supra, is still a viable interpretation of the Fourth Amendment with respect to pretext arrests, (2) whether Article I, Section 9 of the Texas Constitution provides greater protection than the Fourth Amendment with respect to pretext arrests and (3) whether the evidence at appellant's jury trial raised an issue with respect to pretext arrests which required instruction of appellant's jury pursuant to Article 38.23. Having granted the State's motions for rehearing of our refusal of the State's petitions, we now address these issues.

We very recently resolved the first issue presented by the State for review, i.e., whether *Black* is still a viable interpretation of the Fourth Amendment with respect to pretext arrests. In *Garcia v. State,* 827 S.W.2d 937 (Tex.Cr.App., No. 929–90, April 1, 1992), we overruled Black v. State, supra, and held, relying on the majority rule in the federal circuit courts, that for Fourth Amendment purposes the validity of an arrest or stop must be determined solely by analyzing objectively the facts surrounding the event. We further held that an arrest or stop does not violate the Fourth Amendment simply because the police had an ulterior motive for making it, or

did not follow standard police procedure in doing so. We need not discuss the legality of appellant's stop and arrest under the Fourth Amendment, however, since appellant has only questioned the legality of his stop and arrest under Article I, Section 9 of the Texas Constitution, and we therefore dismiss this issue as improvidently granted.

██ The second issue raised by the State is whether Article I, Section 9 of our Constitution provides greater protection from pretext arrests than the Fourth Amendment. The Court of Appeals held, in effect, that Article I, Section 9 could provide no less protection from pretext arrests than that provided in *Black,* a case decided under the Fourth Amendment. Our decision in *Garcia,* which overruled *Black,* obviously calls the Court of Appeals' decision on this issue into question. We do not believe, however, that it is either necessary or appropriate to resolve this issue since the facts of this case cannot be construed as constituting a pretext arrest or stop.

The record in this case shows that Officers Jackson and Ross had only a generalized suspicion that the Laser was a stolen vehicle when they stopped it following appellant's commission of the offense of driving on the wrong side of the road. We have previously held that the issue of a pretext stop is not raised simply because the police validly stop a vehicle for a traffic violation when they have a mere generalized suspicion that the driver of the vehicle was involved in a separate crime. *Goodwin v. State,* 799 S.W.2d 719, 726 (Tex.Cr. App.1990) (valid stop of defendant's vehicle for traffic violation by police when they had only a generalized suspicion that defendant was involved in a separate crime could not be construed as a pretext arrest). Since the issue of a pretext stop has not been raised by the facts, we will not address the constitutionality of that stop under Article I, Section 9. *Goodwin,* 799 S.W.2d at 726 (refusing to address conflict between *Black* and federal case law where

---

9. The Court of Appeals also held that the trial court did not err in denying appellant's pretrial motion to suppress evidence and statements ob-

tained by the police as a result of a pretext arrest. Since appellant has not petitioned for review of that issue, it is not before us.

stop of defendant's vehicle by police could not be construed as a pretext stop).

The facts surrounding appellant's arrest also may not be construed as constituting a pretext arrest. Officers Jackson and Ross testified that they decided to arrest appellant, rather than simply cite and release him, because he was nervous, had given an incomplete mailing address, had difficulty spelling his last name, and had given them insufficient information to allow them to verify the ownership of the Laser. These facts made the officers believe that appellant was not telling the truth and would not honor a promise to appear in court on his citations. The Court of Appeals states, in essence, that these facts supported the officers' decision to arrest, but could have also "fuel[ed the officers'] suspicions of car theft," which would give rise to the possibility that the officers' arrest of appellant was a pretext to investigate a car theft offense.

■ We disagree with the Court of Appeals' analysis because it ignores the uncontradicted testimony of Officer Jackson that it was "proper police procedure" to arrest appellant under the facts and circumstances of this case. The gravamen of this testimony is that *any* Fort Worth police officer would have been required to arrest appellant in this factual situation, and would not have been permitted to release him on a promise to appear. An arrest of a person is not a pretext arrest if the police *would have arrested that person in any event*, even if the police had not had an ulterior motive at the time of the arrest. See Wayne R. LaFave, *Search and Seizure*, Section 1.4(e), at 92–3 (2nd Ed. 1987); *United States v. Lillard*, 929 F.2d 500, 502 (9th Cir.1991) (stop of defendant not a pretext stop where police officer suspected defendant of drug manufacturing but would have stopped defendant for speeding and careless driving violations in any event). Again, since the issue of a pretext arrest has not been raised by the facts, we will not address the constitutionality of that arrest under Article I, Section 9. *Goodwin v. State*, supra.

The third issue presented by the State for review is whether the evidence at appellant's jury trial raised an issue with respect to pretext arrests which required instruction of appellant's jury pursuant to Article 38.23, V.A.C.C.P. A defendant is entitled to an instruction under Article 38.23 only where the evidence at trial raises a factual issue concerning whether evidence has been obtained in violation of the laws or Constitutions of Texas or the United States. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Cr.App.1982); *Marrs v. State*, 647 S.W.2d 286 (Tex.Cr.App.1983); *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Cr.App. 1986). There is no dispute concerning the facts of the stop and arrest of appellant as previously set forth in this opinion. Moreover, and as we stated in our discussion of the State's second issue, these undisputed facts cannot be construed as a pretext stop or arrest. Appellant was therefore not entitled to an instruction concerning pretext arrests under Article 38.23.

Based on the foregoing, the Court of Appeals erred in holding that appellant was entitled to a jury instruction on pretext arrests under Article 38.23. We therefore reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.

CLINTON and MALONEY, JJ., concur in the result.

OVERSTREET, J., dissents.