11th Court of Appeals
Eastland, Texas
Opinion
 
Paul Anthony Lynn
            Appellant
Vs.                  No. 11-03-00019-CR -- Appeal from Dallas County
State of Texas
            Appellee
 
            The jury convicted Paul Anthony Lynn of possession of cocaine, and the trial court assessed
his punishment at 25 years confinement. We affirm.
Issues Presented for Review
            Appellant asks this court to review the evidence and to decide: (1) whether the “stop of
appellant and his subsequent detention” was a “pretext arrest” which violated the provisions of TEX.
CONST. art. I, § 9 and U.S. CONST. amend. IV; (2) whether the police officers had probable cause
to arrest appellant for public intoxication or if that was a pretext to justify the search incident to his
arrest; and (3) whether the trial court erred by not including the “Exclusionary Rule” in the jury
charge.
The Indictment
            The indictment charged that, on or about April 5, 2002, appellant knowingly possessed a
controlled substance (one gram or more, but less than four grams, of cocaine); that he had previously
been convicted of possession of a controlled substance in 1990; and that he had previously been
convicted of arson in 1982.
Relevant Evidence
            We need not discuss the testimony of the chemist who tested and weighed the controlled
substance which was found in appellant’s possession at the time of his arrest for public intoxication. 
The only evidence which is relevant to the three issues is the testimony of the two police officers.
 
Officer Robert Hamilton
            The first witness, Officer Robert Hamilton of the Dallas Police Department, testified that he
and Officer Gloria Doll were on bicycle patrol in the Central Business District on the afternoon of
April 5, 2002. They were using bicycles in order to “get into tighter places” because they were trying
to interact with people, to be proactive, and to stop crimes before they happen. Officer Hamilton
testified that, between 6:00 p.m. and 7:00 p.m. that afternoon, he saw what “appeared to be a drug
transaction” between appellant and another man in a parking lot at the labor hall where day laborers
go for employment. As the two officers rode their bicycles into the parking lot, appellant and the
other man moved apart. Officer Hamilton followed appellant, and Officer Doll followed the other
man. 
            Officer Hamilton said that he conducted a Terry frisk


 or “patdown of the outer clothing” to
make sure there were no weapons. Officer Hamilton identified appellant as the man he talked to that
afternoon “about what was going on in that parking lot.” Officer Hamilton testified that he was
conducting “a temporary investigative detention.” Appellant was not free to leave, but Officer
Hamilton said that appellant was not under arrest at that time. During this temporary detention,
Officer Hamilton learned that appellant had “slurred speech,” “bloodshot eyes,” and breath “smelling
of alcohol.” Officer Hamilton “made the determination” that appellant was “possibly a danger to
himself or others” and arrested him for public intoxication. 
            During the search incident to appellant’s arrest for public intoxication, Officer Hamilton
found a paper sack which contained 31 small bags of a rock-like substance which was later identified
as crack cocaine. Officer Hamilton explained to the jury that the search incident to arrest was
different from the Terry frisk which had already been done. This search was to make sure that “no
contraband or any weapons” could get into the jail. Officer Hamilton called for a “mobile squad car
element” to transport appellant from the scene of his arrest to the Dallas County Jail. 
            During his cross-examination, Officer Hamilton agreed that the appearance of an “illegal
drug transaction” is what caused him to go into the parking lot. The officer said that appellant was
not “falling down” or “stumbling” and that appellant was alert enough to “respond properly” to the
questions which were asked. The officer also agreed that he did not administer any field sobriety
tests to appellant


 and that not every person who has bloodshot eyes is intoxicated. Officer Hamilton
told appellant’s attorney that the offense occurred in a “high crime area” which was known for
“strong arm robberies” and that homeless people get “rolled by other individuals for money” which
they earn while working from the day labor hall which was near the parking lot. 
Officer Gloria Doll
            The only other witness who testified about the detention, investigation, arrest, and search of
appellant was Officer Gloria Doll of the Dallas Police Department. Officer Doll testified that she
and Officer Hamilton were in uniform and that they were riding on police department bicycles on
April 5, 2002, at about 6:45 p.m. Relevant portions of her testimony read as shown:
            Q: [Did] anything catch your attention [and cause] you to divert from just
riding in a straight line?
 
            A: Yes. We were on patrol going north on Akard, 1700 block of Akard, when
my partner, who was slightly ahead of me, started to move forward toward
something. I could tell from my experience working with him and other officers that
he had seen something he wanted to investigate. So I look over, and I saw two black
males quickly moving apart from each other and my partner moving towards them. 
So we went over to that location and detained those two males.
 
            Q: Now, you say “detained.” At that point, were either of those two
individuals under arrest?
 
            A: No.
 
            Q: Were they free to leave?
 
            A: They were under investigative detention. We were investigating
suspicious activity.
 
[OFFICER DOLL IDENTIFIED APPELLANT AS THE MAN WHO WAS
DETAINED BY HER PARTNER WHILE SHE DETAINED AND TALKED TO 
THE OTHER MAN.]
 
            Q: What’s your purpose in talking to this person?
 
            A: When I looked over and saw these two males quickly moving apart from
each other, this is an area that’s a high crime area. We have a lot of drug activity. 
We have a lot of complaints about drug sales in that area. 
 
[OFFICER DOLL CONDUCTED A TERRY FRISK ON THE MAN WHO WAS
WITH APPELLANT. AFTER CHECKING THAT MAN’S IDENTIFICATION
AND MAKING SURE THERE WERE NO OUTSTANDING WARRANTS, SHE
RELEASED HIM.]
 
            Q: Now, your primary contact was with this other person, and Officer
Hamilton’s primary contact was with [appellant]?
 
            A: Yes.
 
            Q: Now Officer Doll, at some point, did you make any observations about
[appellant]? And I’m talking about related to anything about intoxication. Did you
make any observations about him?
 
            A: Yes. As I’m talking to my person that I’m investigating, I was also
watching and keeping my eye on [appellant] and my partner to see if [my partner] 
needed any help. After I released the man I was talking to, I directed my attention
toward [appellant]. And I made observations that led me to believe that he was
intoxicated. 
 
            Officer Doll told the jury that the “standard” which she used in deciding whether appellant
was guilty of “public intoxication” was whether or not he presented a danger to himself or others. 
She testified that appellant could have wandered out into the street and been hit by a car and that he
could have become the victim of a crime because he would not have been able to defend himself
because of his intoxication. 
            During her cross-examination, Officer Doll testified that it was her opinion that appellant was
intoxicated and that he “presented a danger to himself and others.” She agreed with appellant’s
attorney that a person could have bloodshot eyes without being intoxicated and that a person could
have slurred speech without being intoxicated. Officer Doll also agreed that she and her partner did
not administer the field sobriety tests which are given to a person who is arrested for driving while
intoxicated. Officer Doll said that there was not an arrest report for the public intoxication offense
because a more serious charge was filed after the cocaine was found. Officer Doll also told the jury
that appellant was arrested in a “high crime” area and that appellant was arrested about seven blocks
from the shelter where he was “staying.” 
Motion to Suppress
            The first two issues are overruled. The trial court did not err in overruling the motion to
suppress evidence; the evidence supports the trial court’s ruling that the police officers had a
“reasonable suspicion” to believe that appellant was involved in criminal activity. See, e.g., Balentine
v. State, 71 S.W.3d 763, 768 (Tex.Cr.App.2002), which stated:
The reasonableness of a temporary detention must be examined in terms of the
totality of the circumstances and will be justified when the detaining officer has
specific articulable facts, which, taken together with rational inferences from those
facts, lead him to conclude that the person detained actually is, has been, or soon will
be engaged in criminal activity.
 
Balentine discusses Terry v. Ohio, supra, which makes it clear that there is no “bright line” time
limit and that the reasonableness of the temporary detention depends on whether the police diligently
pursue their investigation to dispel or confirm their suspicions quickly. During that “temporary
detention,” the officers determined that appellant was intoxicated and then placed him under arrest
for public intoxication. The cocaine was found during the search incident to that arrest.
            While we review the trial court’s application of the law de novo, we defer to the trial court’s
determination of the historical facts. See, e.g., Maxwell v. State, 73 S.W.3d 278, 281
(Tex.Cr.App.2002). It was for the trial court to determine the credibility of the officers’ testimony,
and there is evidence to support the trial court’s ruling that this was not a “pretext arrest.” 
            Appellant cites Cook v. State, 1 S.W.3d 718 (Tex.App. - El Paso 1999, pet’n ref’d), which
contains language favorable to his argument that there was an unlawful “pretext arrest” and that the
trial court erred in overruling his motion to suppress evidence about the cocaine which was found in
his possession. Cook is factually distinguishable, and we will follow the holdings in Balentine and
Maxwell.
 
 
The Jury Charge
            The third issue is also overruled. The trial court did not err in refusing to charge the jury on
the “Exclusionary Rule.” The police officers’ testimony was not contradicted by evidence.


 Bell v.
State, 938 S.W.2d 35, 48 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 827 (1997); Hamilton v. State,
831 S.W.2d 326, 331 (Tex.Cr.App.1992); Shpikula v. State, 68 S.W.3d 212 (Tex.App. - Houston [1st
Dist.] 2002, pet’n ref’d).
This Court’s Ruling
            The judgment of the trial court is affirmed. 
 
 
                                                                                    BOB DICKENSON
                                                                                    SENIOR JUSTICE
 
May 27, 2004
Do not publish. See TEX.R.APP.P. 47.2(b). 
Panel consists of: Arnot, C.J., and
McCall, J., and Dickenson, S.J.