**Robert Lee SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–89–0090–CR.**

Court of Appeals of Texas,
Amarillo.

April 24, 1990.

Rehearing Denied May 21, 1990.

Adkins & Fling, James C. Fling, Shamrock, for appellant.

Harold Comer, Dist. Atty., John Mann, Asst. Dist. Atty., Wheeler, for appellee.

Before REYNOLDS, C.J., and DODSON, and POFF, JJ.

REYNOLDS, Chief Justice.

A jury found appellant Robert Lee Smith guilty of the offense of aggravated possession of a controlled substance, and assessed his punishment at eighteen (18) years confinement in the Texas Department of Corrections (now, the Texas Department of Criminal Justice, Institutional Division). By eight points of error, appellant contends the trial court erred (1–3) by overruling his motion to suppress evidence because the initial stop was a pretextual stop motivated by use of a drug courier profile, consent to search was obtained before *Miranda* warnings had been given, and the search lacked voluntary consent or probable cause to support it; (4–5) by refusing appellant's motion for instructed verdict on the grounds of legal insufficiency of evidence to establish guilt, and a fatal variance between the indictment and proof; (6–7) by refusing to declare a mistrial because of improper jury arguments by the prosecutor; and (8) by refusing appellant's motion for new trial because of evidence not previously available to defendant. For the reasons stated, we will affirm.

Prior to trial, appellant filed a motion to suppress the contraband evidence which formed the basis of the prosecution. After a hearing on the motion, the court found the initial detention was legal, being based on a traffic violation, and denied the motion to suppress. The court also held that voluntariness of the consent to search was a question of fact to be submitted to the jury at the time of trial.

At the subsequent trial on the merits, it was shown that the instant prosecution developed when Department of Public Safety officers Waight and King observed a car with Tennessee license plates pass another car on Interstate Highway 40. Officer Waight testified his radar showed the Tennessee vehicle was traveling 69 m.p.h., four miles over the speed limit. Officer King did not check the radar and could only testify officer Waight said the car was speeding. Odie Blakemore, the driver of the car, testified he was not speeding "by the car hand." The patrolmen stopped the car and both troopers exited their vehicle, officer Waight approaching the driver while officer King observed. The car had four occupants. Appellant was seated in the front seat with Odie Blakemore, the driver; two women were in the back seat.

Officer Waight secured Blakemore's license and a registration for the vehicle and then asked Blakemore to accompany him to the patrol car, where he began issuing a warning citation for speeding. Blakemore complied, sitting on the passenger side of the patrol car while officer Waight sat on the driver's side, and "began to visit" with him concerning his point of origin, his desti-

nation, and whether he was transporting any contraband. At this time, officer Waight told Blakemore he intended to issue a warning citation for speeding. Up to this point, there was nothing to excite officer Waight's suspicion except the fact that Blakemore "became highly nervous" whenever the word "contraband" was mentioned. Trooper Waight maintained in his testimony that it was his standard practice to question motorists detained on a routine traffic stop concerning the possible transport of contraband.

It was also standard procedure for DPS troopers to carry written consent-to-search forms and to secure a signature on such a form before conducting a search based on consent. When officer Waight asked Blakemore if he had any objection to a search, Blakemore replied "No, if Robert [appellant] don't [sic] mind." When requested to sign a consent form, Blakemore refused, saying consent needed to be obtained from appellant.

Officer Waight then sent Blakemore back to the car to ask appellant back to "visit" with him. This "visit" took much the same course as that with Blakemore. Appellant was nervous at the mention of contraband and refused to sign the consent form. Officer Waight testified Appellant said "to go ahead and search the car, he did not have any problem," and also stated that "Odie [Blakemore] was the one that [sic] had control of the vehicle."

Officer Waight interpreted the two men's remarks as oral consent to search, informed officer King of their "consent," and had all four of the car's occupants step into the grassy median between the service road and the highway to await the search. The search disclosed two brick-like packages which, upon analysis, proved to be 35% cocaine. The "bricks" were in a drawstring bag contained inside another, woven bag. The occupants of the vehicle were arrested, given the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and jailed.

By his first three points of error, appellant contests the admissibility of the contraband evidence at trial. He contends that the search which produced the evidence was unlawful because (1) the underlying stop was motivated by use of a drug courier profile, was pretextual and, therefore, illegal; (2) any consent to search was obtained before *Miranda* warnings were given; and (3) the officers lacked voluntary consent or probable cause to support the warrantless search.

A pretextual stop occurs when officers are aware of a specific crime and conduct surveillance of an individual seeking to detain, question, or search the suspect in relation to the suspected crime. Typically, surveillance is maintained until a minor traffic infraction is observed and the suspect is then detained on that pretext. In its more egregious form, a pretextual stop may be effected for traffic violations by officers who do not normally enforce the traffic laws and who have delayed the stop until long after observing the traffic infractions. A finding of pretext results in the suppression of evidence discovered. *See, e.g., Black v. State*, 739 S.W.2d 240, 244–45 (Tex.Cr.App.1987).

Appellant contends that in the present case, the officers were not aware of a specific crime, but had a general suspicion of criminal conduct based on the use of a drug courier profile. The traffic detention, he argues, was merely a pretext to conduct an investigation into the transport of drugs motivated by the drug courier profile.

The record shows that when patrolmen work in pairs, one assumes the role of "lead trooper," and the other takes the role of "referred trooper." The lead trooper drives the patrol car and is in charge, making the decisions and the judgment calls. On the date of the appellant's arrest, officer Waight was functioning as lead trooper; officer King served as referred trooper.

Officer Waight's testimony is that the reason for the initial detention was a traffic violation. Officer King does not contradict this. When asked if he ever said he made use of a drug courier profile, officer Waight denied it. He did, however, admit to using "identifiers" upon which to base his suspicions after a car has been stopped.

Since these "identifiers" did not form any part of the basis for the initial stop, they are not relevant to a determination of its validity.

■ Against officer Waight's testimony that the cause of the stop was a traffic violation, stands Odie Blakemore's testimony that he was not speeding. The jury, as the exclusive judge of the facts, the credibility of the witnesses and the weight to be afforded their testimony, *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Cr.App. 1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982), exercised its proper function when it resolved the conflicting evidence to find the existence of a traffic violation. There is no evidence in the record that anything other than that violation motivated the contested stop. It is settled law that an officer has the authority to detain a vehicle after observing a traffic violation. *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Cr.App.1982). This record does not support the existence of a pretextual stop.

■ What the record does reveal is officer Waight's testimony that it was his standard practice to question motorists detained on a routine traffic stop concerning the possible transport of contraband. An investigative stop must last only as long as necessary to effect the purpose of the stop, *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983), unless the officer has probable cause to arrest the person or obtains the person's consent. "When the detention permitted by the statute becomes a mere subterfuge or excuse for some other purpose which would not be lawful the actions then become unreasonable and fail to meet the constitutional requirement." *Faulkner v. State,* 549 S.W.2d 1, 3 (Tex.Cr.App.1976) (citing *Murphy v. State,* 194 Tenn. 698, 254 S.W.2d 979, 980 (1953)). Warrant checks, car registration checks, and verification of identification have all been upheld as legitimate components of otherwise valid investigatory stops. *Petty v. State,* 696 S.W.2d 635, 638 (Tex.App.—Dallas 1985, no pet'n), and cases cited therein. There is nothing in the record to show that appellant was held after all the legitimate components of a traffic stop had been completed. There is an indication that the stop itself began at 11:00 a.m. and the search began at 11:20 a.m.; however, there has been no showing that this period of 20 minutes was unreasonably long for the traffic stop. The first point of error is overruled.

By his second point, appellant attacks the legality of the search on the basis that consent was requested and obtained prior to the issuance of *Miranda* warnings. He contends that he and Blakemore were in custody for *Miranda* purposes when consent to search was requested while each was in the patrol car. He bases this argument on the testimony from both officers that during the questioning following the initial stop of the vehicle, the driver and his companions were not "free to leave." From this, appellant would show the existence of custodial interrogation in the police car and an investigation focused on appellant.

■ Although a traffic stop significantly curtails the freedom of action of the driver and the passengers of a vehicle and constitutes a "seizure" within the meaning of the Fourth Amendment, it does not, by itself, render the motorist or passengers "in custody" for purposes of the *Miranda* doctrine. *Berkemer v. McCarty,* 468 U.S. 420, 436–437, 440, 104 S.Ct. 3138, 3148–3149, 82 L.Ed.2d 317, 332–333, 335 (1984); *Wicker v. State,* 740 S.W.2d 779, 786 (Tex.Cr.App. 1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). In determining whether a defendant is "in custody" for *Miranda* purposes, the following factors must be considered: the probable cause to arrest, the subjective intent of the police, the subjective belief of the defendant, and the focus of the investigation. *Shiflet v. State,* 732 S.W.2d 622, 629 (Tex.Cr.App. 1985).

There is no evidence of probable cause to arrest appellant in the present case. In fact, there is no evidence even of a suspicion of appellant's activity, a significant distinction from the situations in the cases relied upon by appellant, *Ancira v. State,* 516 S.W.2d 924 (Tex.Cr.App.1974) (deten-

tion of suspect in moving police vehicle during interrogation concerning reported cocaine transactions), and *Gonzales v. State*, 581 S.W.2d 690 (Tex.Cr.App.1979) (interrogation of detained DWI suspect in patrol car concerning past offenses). The only violation of the law that had occurred, speeding, had been committed by the driver, not by appellant.

Unlike in *Gonzales*, there is no evidence of a subjective intent of the officer to arrest appellant. In fact, both Odie Blakemore and officer Waight presented testimony that the officer's intent was to arrest no one, but instead, to issue a traffic warning at the end of the detention and allow appellant's party to continue on its way.

The treatment appellant and his companions had received up to this point was consistent with a temporary traffic stop. It is not unreasonable for an officer writing a citation to request the driver to accompany him to the patrol car while he verifies license, registration, etc. Officer Waight's testimony is that he did not vary his routine in any way while handling this traffic stop. The record reveals no reason for anyone of the party to consider himself under arrest and contains no testimony that anyone, in fact, did think he had been arrested.

Lastly, the initial focus of the investigation was to determine the need to issue a traffic warning or citation, or to arrest for speeding using the routine officer Waight testified he always follows. Other than the speeding violation, there was no focus on a specific crime or individual.

In *Ancira*, the defendant was interrogated for the sole purpose of determining whether he had been selling cocaine as had been reported. During this time, he was locked in a moving patrol car with his interrogator, isolated from all public scrutiny. *See Berkemer v. McCarty*, 468 U.S. 420, 438–439, 104 S.Ct. 3138, 3149–3150, 82 L.Ed.2d 317, 333–334 (1984). There is no way to insure he was not subject to such pressure as to "compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. at 467, 86 S.Ct.

at 1624. These surroundings are substantially different from those of a traffic stop.

Although a citizen in a traffic stop is under some pressure when confronted with the aura of authority surrounding an armed, uniformed officer and the awareness of that officer's discretion in deciding whether to issue a citation, an ordinary traffic stop is not so "police dominated" as to impair a citizen's ability to exercise his privilege against self-incrimination and give rise to the requirement of *Miranda* warnings. *Berkemer v. McCarty*, 468 U.S. at 437–439, 104 S.Ct. at 3148–3150. Like a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), a traffic stop is significantly noncoercive in nature. The detainee of a traffic stop is not obliged to respond to questions and, unless the officer has probable cause to arrest, the detainee must be released. *Berkemer v. McCarty*, 468 U.S. at 439–440, 104 S.Ct. at 3150. Although appellant was not free to leave until after the traffic check had been completed, he was not in custody for *Miranda* purposes and the search cannot be invalidated on this ground. *Parker v. State*, 710 S.W.2d 146, 147 (Tex.App.—Houston [14th Dist.] 1986, no pet'n). The second point of error is overruled.

■ By his third point, appellant argues the officers did not obtain voluntary consent to the search from appellant or from the driver and had no probable cause to conduct a search without consent. We note first that, because the initial detention is not tainted with illegality, there is no need to address the inquiry whether intervening circumstances have effected a purge of such taint.

The issue of voluntariness is a fact question determined from the totality of all the circumstances. *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Cr.App.1987). The burden of proof is upon the State to show by clear and convincing evidence that such consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968). Consent must be positive and unequivocal, not the product of actual or implicit duress or coercion. *Reyes v. State*, 741 S.W.2d at

430. A showing of mere acquiescence to a claim of lawful authority is not sufficient. *Bumper v. North Carolina*, 391 U.S. at 548–549, 88 S.Ct. at 1791–1792; *Reyes v. State*, 741 S.W.2d at 430.

The record shows that appellant was detained in a valid traffic detention lasting approximately 20 minutes before consent to search was deemed obtained and search initiated. Sometime during that twenty minutes officer Waight requested appellant's signature on a consent-to-search form. At the pre-trial suppression hearing, officer Waight testified that appellant initially denied having control of the vehicle. Upon being told the driver, Blakemore, had said appellant was in control of the vehicle, appellant refused to sign the form but said "he had no problem with me [officer Waight] searching the vehicle." Appellant testified his reply was, "It would be all right with me. It wasn't my car." When asked to clarify this statement, appellant agreed that he had said, "It's all right with me for you to search."

■ There is no contention that either officer said anything to indicate to appellant that if consent were withheld, he would not be allowed to leave, he would be arrested, or he would be charged with an offense. In short, there is no evidence of coercion or any attempt to deprive appellant of the free exercise of his right to be free from "unreasonable" searches. The fact that appellant did not sign the consent-to-search form does not impair the validity of his oral consent, *Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988), but goes instead to the existence of such oral consent. In the face of appellant's own uncontroverted testimony that he said a search of the automobile would be "all right" with him, there is little room to doubt the existence of his oral consent. We conclude from the totality of the circumstances that appellant's consent to the search of the automobile was voluntary and unequivocal, not a mere acquiescence to a claim of lawful authority.

Appellant further attacks the legality of the search on the basis that the officers did not have the consent of the driver, Odie Blakemore. By this argument, appellant assumes the paradoxical position of attacking the legality of the very search to which he consented, on the basis of a failure to gain another's consent.

It is settled law that rights assured by the Fourth Amendment are personal in nature and their violation may be remedied only at the instance of one whose own rights were violated, not that of a third party. *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968) (defendant could not assert the Fourth Amendment rights of a third party to challenge the legality of a search, but his pre-trial admission of ownership of incriminating evidence to show standing was not admissible against him in subsequent trial); *Rakas v. Illinois*, 439 U.S. 128, 138–140, 99 S.Ct. 421, 427–428, 58 L.Ed.2d 387 (1978). Therefore, an assertion of Fourth Amendment rights should be analyzed in terms of whether the challenged search or seizure has infringed on the legitimate expectation of privacy of the person asserting the right. *Rakas v. Illinois*, 439 U.S. at 140, 99 S.Ct. at 428.

■ By his voluntary consent, appellant waived any expectation of privacy he had in the automobile. If evidence from that search were used against a third, nonconsenting, party, that party might be found to have a legitimate expectation of privacy in the car still subject to Fourth Amendment protection. However, appellant cannot now vicariously assert the Fourth Amendment rights of a third party to undo the consent he freely gave and reclothe himself in the Fourth Amendment protections he previously discarded.

As the trier of the facts, the trial judge determined the credibility of the witnesses and the weight to be given their testimony at the hearings on the motion to suppress evidence. *Kelly v. State*, 669 S.W.2d 720, 726 (Tex.Cr.App.1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 362, 83 L.Ed.2d 298 (1984). The testimony given was consistent with the finding of free and voluntary consent. In the presence of voluntary consent, there is no need to consider whether

the officers had probable cause for a search without consent. The trial court did not err in overruling the motion to suppress the cocaine. Appellant's third point of error is overruled.

■ With his fourth and fifth points, appellant contends the State merely proved he was a passenger in the vehicle containing the cocaine and provided no direct evidence to prove his possession of the cocaine and knowledge of its nature. Therefore, he argues, (4) the evidence of his guilt was legally insufficient and (5) there was a fatal variance between the indictment and the proof.

To prove possession of a controlled substance, the state must show (1) the accused exercised actual care, custody, control, or management over the substance, *Humason v. State*, 728 S.W.2d 363, 365 n. 7 (Tex.Cr. App.1987); and (2) that such act was knowing or intentional. *Id.* at 365. Possession need not be exclusive; appellant may possess the contraband jointly with others. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Cr.App.1985).

Where the accused is not in exclusive possession of the place where the contraband is found, additional facts or circumstances must be shown from which a fact finder may reasonably infer he had knowledge of the contraband and exercised management or control of it. Proof that the defendant was merely in the vicinity of the controlled substance is not sufficient. *Dubry v. State*, 582 S.W.2d 841, 843 (Tex. Cr.App.1979). The evidence of an affirmative link need not be direct. It may be circumstantial, but it must exclude every other reasonable alternative hypothesis beyond a reasonable doubt. *Humason v. State*, 728 S.W.2d at 366.

In the instant case, the cocaine was found in a Payless shoe bag which was inside another, woven bag or purse situated in the back of the car on the left rear floorboard next to the drive axle hump. Alma Delk, one of the two women who participated in the journey from California, testified that she never saw the bag until about 30–60 minutes before the traffic detention, at which time she noticed it "sitting on the hump in the back of the car."

Odie Blakemore, the driver, testified to three occasions on which he observed appellant exercise some control or management over the bag. He first saw the bag the day after their arrival in California while they were meeting someone in another car in a parking lot. Appellant "told Patricia [Cole] to hand him the bag ... out of the back floor board and she did." After walking over to the other car, appellant came back with the bag and said, "We're ready to roll." Delk's testimony is that this never occurred. Blakemore testified he did not see where the bag was put, but knew it wasn't put in the trunk and assumed it was put on the back floor board because he was in the front driver's seat.

On the way back from California, the party stopped to eat and, according to Blakemore, appellant "said he wanted to stay in the car while everybody else went to get something to eat." Later, when they stopped at a motel for the night, Blakemore testified appellant "told Patricia to get the purse and bring it with her and she had it with her." He further testified that Patricia put the bag back in the back seat the next morning. Of the four instances of control Blakemore recounted, three of them were plainly instances of appellant's control of the bag, alone or with Patricia Cole acting under his supervision.

Unlike in *Humason*, 728 S.W.2d 363, here the State has shown more than appellant's mere presence in the vicinity of the contraband. It has offered direct evidence of three instances of appellant's control and dominion of the bag and, hence, of the contraband it contained. Nor does the State's case rely upon proximity coupled with a relationship to others in possession of the contraband. The evidence shows instances where appellant, himself, clearly exercised dominion over the bag later found to contain contraband. Also, unlike in *McGoldrick*, 682 S.W.2d 573, here there is a clear affirmative link between appellant and the package containing the contraband. When the foregoing is considered in combination with testimony that appellant

paid all the bills on the trip and made all decisions concerning destination and time-tables, there was sufficient evidence to support the reasonable inference by the jury that appellant's control or management of the bag and its contents was knowing and intentional.

Viewed in the light most favorable to the verdict, these facts would enable a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex. Cr.App.1984). Accordingly, appellant's fourth and fifth points of error are overruled.

By his sixth and seventh points, appellant complains the trial court erred by not declaring a mistrial because of improper jury argument by the State. Careful review of both the submitted transcript and two volumes of statement of facts fails to reveal any record of the jury argument by either counsel for the State or the defendant. Appellant's references in his brief to "(SF/Argument 21)" and "(SF/Argument 26)" are unavailing, for no volume of the statement of facts contains the jury argument. The only record of the jury argument's existence is the court reporter's note found at page 174 of the record of the trial on the merits which states: "(Whereupon jury argument was presented by counsel for the State and the Defendant)."

Appellant bears the burden of seeing that a sufficient record is presented upon appeal to show the error assigned. Tex.R.App.P. 50(d). Without a statement of facts showing the rulings of the trial court to which appellant assigns error, nothing is presented for review by this Court. *Hale v. State*, 509 S.W.2d 637, 638 (Tex.Cr.App.1974). Accordingly, appellant's sixth and seventh points are overruled.

By his last point of error, appellant contends the trial court erred in its refusal to grant his motion for new trial on the basis of the testimony of codefendant Patricia Cole. Relying on *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr.App.1977), appellant urges that Cole's testimony is newly available evidence which warrants a new trial.

Appellant's trial on the merits was concluded on February 17, 1989 when the jury rendered its verdict on his punishment. The trial of his codefendant, Patricia Ann Cole, on her plea of guilty, began that same day. During her trial, Cole testified to her own control of the contraband. Although no evidentiary hearing was held on appellant's motion for new trial, the testimony of Patricia Cole upon which appellant depends was attached as an exhibit to the Motion for New Trial. In addition, the trial judge at Cole's trial also conducted appellant's trial and ruled on his motion for new trial.

Absent a showing of clear abuse of discretion by the trial judge, his decision on a motion for new trial will not be disturbed. *Bolden v. State*, 634 S.W.2d 710, 711 (Tex. Cr.App.1982). To show that a denial of a motion for new trial was an abuse of discretion, the record must show that the evidence was unknown to movant before the trial, that his failure to discover it was not a result of a lack of due diligence, that it is probably true and its materiality is such as will probably bring about a different result on another trial, and that it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Id.* at 711–712. The trial court did not assign a specific reason for denying appellant's motion for new trial, but the motion should be denied if appellant has failed to establish any of the essential requirements. *Williams v. State*, 504 S.W.2d 477, 482 (Tex.Cr.App. 1974).

Texas courts have construed the term "newly discovered evidence" to include testimony that is newly available for purposes of ruling on a motion for new trial. *Anderson v. State*, 717 S.W.2d 622, 626 (Tex.Cr.App.1986). However, the record does not support appellant's position that the absence of Cole's testimony was not the result of a lack of due diligence on his part.

The right to compulsory process for obtaining witnesses is not absolute, but may be waived. A defendant cannot claim deprivation of a constitutional right when he has waived it or not attempted to exercise

it. Similarly, he cannot assert that the right was blocked by the superior constitutional right of a codefendant which the codefendant never personally claimed. *Drew v. State,* 743 S.W.2d 207, 225 (Tex.Cr. App.1987).

Appellant does not demonstrate, and the record does not show, any request by appellant for compulsory process such as an attachment, bench warrant or subpoena. In fact, appellant never made any attempt to call Cole as a witness. The only suggestion of an assertion by Cole of her Fifth Amendment right is appellant's statement in his brief that Cole "had been advised by her counsel not to be a witness in this case until after her trial." There is no support for appellant's statement in the record; hence, it cannot be accepted as fact. *Herrin v. State,* 525 S.W.2d 27, 29 (Tex.Cr. App.1975).

 However, if there were record support for the statement, we note that merely being advised by one's attorney not to testify does not constitute an assertion of that right. The privilege against self-incrimination is personal to the witness and cannot be asserted by anyone on his behalf, not even his own attorney. *Etter v. State,* 679 S.W.2d 511, 515 (Tex.Cr.App.1984). The record does not contain an assertion of a superior constitutional right by Cole defeating appellant's right to compulsory process for obtaining a witness in his defense. The due diligence required of appellant has not been established.

Furthermore, Cole's testimony of her control over the bag of cocaine is merely cumulative or, at best, corroborative of Blakemore's testimony and is consistent with joint control by Cole and appellant. Thus, it cannot be said that this evidence is material or will probably produce a different result at another trial.

Under these circumstances, we cannot say that the judge, finding an absence of one or more of the necessary requirements for a new trial, abused his discretion in denying the motion. This record would support denial for one or more of the reasons that the evidence is not newly available in that appellant did not exercise due diligence to obtain the evidence at trial, was not material, and a different result probably would not be reached on its production at another trial. *Williams v. State,* 504 S.W.2d at 483. The last point of error is overruled.

The judgment of the trial court is affirmed.