Willie **MILES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–89–0177–CR.

Court of Appeals of Texas,
Amarillo.

Oct. 11, 1990.

See also 781 S.W.2d 608.

Jeff Blackburn, Kay Davis, Amarillo, for appellant.

Danny Hill, Dist. Atty., Charles L. Slaughter, Asst. Dist. Atty., Amarillo, for appellee.

Before DODSON, BOYD and POFF, JJ.

POFF, Justice.

Upon a plea of guilty, appellant Willie C. Miles was convicted of aggravated possession of marijuana in an amount of more than fifty pounds but not more than 200 pounds. As punishment, the court sentenced the appellant to serve eight years in the Texas Department of Corrections. Appellant contends in two points of error that the trial court erred in overruling his motion to suppress by claiming that he was unlawfully detained in violation of both the United States Constitution (P.O.E. # 1) and the Texas Constitution (P.O.E. # 2). Pursuant to both of these violations, appellant urges that the State failed to establish a voluntary consent to search and prove that the taint of the prior illegality had been attenuated. For the reasons stated, we will overrule both points of error and affirm the judgment of the trial court.

Before addressing the appellant's points of error, we first state that the court will adhere to the well-established rule that in a pretrial hearing on a motion to suppress evidence seized as a result of a warrantless search, the trial court is the exclusive trier of fact, and his findings will not be disturbed if supported by the evidence. *Green v. State*, 615 S.W.2d 700, 707 (Tex. Crim.App.1981); *McCallum v. State*, 608 S.W.2d 222, 225 (Tex.Crim.App.1980); *Walker v. State*, 588 S.W.2d 920, 924 (Tex.

Crim.App.1980). It is the duty of the trial court to resolve conflicts in the testimony at the suppression hearing. *Sanchez v. State*, 582 S.W.2d 813, 815 (Tex.Crim.App. 1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980). If supported by the evidence, this court will presume that the trial court made all the findings necessary to support its judgment. *Hoag v. State*, 693 S.W.2d 718, 721 (Tex.App.—San Antonio 1985), reversed on other grounds 728 S.W.2d 375 (Tex.Crim.App.—1987).

The facts in this case reveal that on April 9, 1988, Texas Highway Patrol Trooper Wayne C. Williams, who was partnered with Trooper Mike Moser, clocked a 1978 Chrysler traveling east on Interstate 40 at 69 m.p.h. in a 65 m.p.h. zone. The troopers, who were traveling west, turned around to pursue and stopped the car which was driven by the appellant, Miles. The troopers also allegedly noticed that appellant and his passenger were not wearing safety belts and that the driver failed to signal a lane change. After identifying himself, the trooper requested that appellant sit in the patrol car due to the bad weather. While Trooper Williams issued two warning citations, he questioned appellant regarding numerous factors such as point of origin, destination, his employment and his passenger's identity.

Trooper Williams testified that his questions were posed to elicit possible "indications" that the appellant was a drug trafficker. Since appellant's car displayed Arizona plates and registration, Williams' general suspicion was aroused because of Department of Public Safety intelligence data which recites that areas such as Phoenix, from which appellant was traveling, are known "staging areas." Appellant stated that he was traveling to Chicago, a region which D.P.S. intelligence labels as a "target area" for narcotics. The trooper testified that Interstate 40 was known as a "pipeline" for marijuana and cocaine traffic. Additionally, D.P.S. intelligence allegedly provided troopers with yearly reports of detailed information on drug traffickers apprehended in the previous year.

Before completing the warning citations, Trooper Williams explained that the reason that he was asking the appellant these questions was because "a lot of contraband [was] coming out of ... Phoenix." The trooper testified that upon mentioning the word contraband the appellant allegedly "became more nervous than ... a normal person is when they are stopped by officers." Appellant also stated that he was unemployed, but he was getting into the barbecue business with the financial assistance of his dentist. Consequently, Williams determined that appellant had no visible means of support.

During this time, Trooper Moser had returned to the patrol unit after talking with appellant's passenger. Through a prearranged, visual signal (an affirmative nod), Moser indicated to Williams that "if we can get a consent to search [the car], let's try to get one." At this time, Moser then handed Williams a partially completed consent to search form which Williams completed and then asked the appellant for his consent and signature to that effect. In response to his attorney's question, appellant stated that he voluntarily signed the consent to search form.

Upon executing the search, Trooper Williams searched the vehicle's interior while Trooper Moser opened the trunk and located approximately 95 pounds of marijuana in two boxes. Consequently, both the appellant and the passenger were placed under arrest for aggravated possession of marijuana.

Appellant combines his argument for both points of error which contain three identical sub-points, and we will address each point in a similar fashion. First, appellant concedes that Trooper Williams did have the authority to stop him for speeding and failure to wear a safety belt. However, the stop is alleged to have been pretextual and that his continued detention was without reasonable suspicion.

▪ A pretextual stop is one in which officers, who are suspicious of a serious specific offense, conduct surveillance of an individual until he commits some other minor offense (usually traffic violations) so

that the officers can detain, question or search the individual regarding the more serious offense. *Smith v. State*, 789 S.W.2d 350, 352 (Tex.App.—Amarillo 1990, pet. ref'd). In other words, the police lack adequate grounds to stop an individual for the serious offense, so they lie-in-wait until he commits some minor infraction for which he is then surreptitiously stopped.

The leading Texas case on pretextual stops recognizes the distinct differences between factual situations which give rise to the pretext argument. *Black v. State*, 739 S.W.2d 240, 245 (Tex.Cr.App.1987). In *Black*, the Court of Criminal Appeals found that a traffic stop had been used as a pretext to search the defendant's car for drugs by applying the five factors considered in *Amador–Gonzalez v. United States*, 391 F.2d 308 (5th Cir.1968). *Id.* at 244–245. These factors include: surveillance for the suspected offense, officer's real reason for stopping the defendant, whether the officer normally makes traffic stops, whether traffic tickets were written and how much time expired between the traffic offense observed and the stop. *Amador–Gonzalez*, 391 F.2d at 313–314. The 5th Circuit summarized that the police may not engage "in a deliberate scheme to evade the requirements of the Fourth Amendment by using a traffic arrest ... to search appellant for narcotics." *Id.* at 314.

In the instant case, appellant contends that the troopers target out-of-state license plates as part of a drug courier profile to generate a general suspicion toward the occupants of the vehicle. This general suspicion is argued to be the foundation for the troopers' awareness of a specific serious crime which lead to the pretextual stop for traffic offenses.

Upon application of the above mentioned criteria for finding a stop to be pretextual, there is no evidence in the record to indicate that the stop was in any way a "deliberate scheme to evade the requirements of the Fourth Amendment." *Amador–Gonzalez*, 391 F.2d at 314. The appellant testified that the troopers "turned around immediately, and the traffic was real [sic] heavy.... and then all of a sudden, they pulled right in behind me and turned on their lights." This dispels the idea that the troopers had conducted a surveillance of the appellant, and it also indicates that there was little delay between the observation of the traffic offense and the stop.

Trooper Williams testified that he originally pursued the appellant because of his speed and denied that the stop was a drug courier profile stop. The trooper did admit that he made use of numerous questions after the stop was made to reveal "indications" that the appellant might be trafficking narcotics. Therefore, nothing in the record reveals that the traffic stop was actually motivated by a pre-conceived belief that the appellant was in possession of contraband.

Additionally, the trooper testified that his purpose for being on Interstate 40 was for routine traffic law enforcement. During the time that Williams asked these questions, warning citations for the traffic violations were written. Appellant testified that the trooper sought his consent after approximately 15 minutes. Conversely, Williams testified that consent to search was requested within approximately four minutes. Even if we were to accept the appellant's version, this Court held in *Smith* that 20 minutes did not appear to be an unreasonably long period of time for a traffic stop. *Smith v. State*, 789 S.W.2d at 353. Therefore, applying the instant facts to the criteria as stated in *Black*, 739 S.W.2d 240, appellant's first point must be overruled.

Moreover, the Court of Criminal Appeals' continued reliance on *Amador–Gonzalez* may no longer be necessary. The 5th Circuit held in 1987 that the correct rule is that "where the officers have taken no action except what the law objectively allows, their subjective motives in doing so are not even relevant to the suppression inquiry." *United States v. Causey*, 834 F.2d 1179, 1185 (5th Cir.1987). Also, the Court noted that insofar as *Amador–Gonzalez* professed a rule to the contrary that it was overruled. Likewise, appellant's ar-

gument would not pass muster under the *Causey* rule.

■ Alternatively, the appellant argues in his second point that his continued detention after the initial stop was illegal because it was not based upon specific and articulable facts sufficient to warrant the restraint upon his freedom. During the time in which Trooper Williams wrote the warning citations, he elicited that the appellant's trip originated from Phoenix, a known narcotics staging area and that he was enroute to Chicago, a known target area. Combined with the D.P.S. intelligence data, appellant's nervousness and Williams' experience and training, the above information supports the suspicion that drug trafficking might be involved.

The present inquiry consists of very similar information obtained by a D.P.S. narcotics agent who subsequently asked the pilot of an airplane for consent to search which revealed cocaine. *United States v. Zukas*, 843 F.2d 179, 181 (5th Cir.1988). The defendant in *Zukas* argued that the narcotics officer's stop of the airplane during final preflight preparations based upon F.A.A. regulations was pretextual, but the 5th Circuit disagreed and followed the *Causey* rule (i.e. an officer's subjective motives are not relevant to suppression inquiries if the only action taken is objectively allowed by law.). *Id.* at 182, n. 1. The information obtained by the troopers from appellant was "specific and articulable facts, which taken together with the rational inferences from these facts reasonably warrant[ed]" the brief seizure and request for consent to search of the appellant. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987). Thus, appellant's second point is overruled.

■ Next, the appellant argues that his consent was not voluntarily given. While it is true that the state must prove by clear and convincing evidence that consent was freely and voluntarily given, this determination is to be made from the totality of the circumstances by the trial court as the sole judge of the credibility of the witnesses. *Rumbaugh v. State*, 629 S.W.2d 747, 751–752 (Tex.Crim.App.1982). If supported by the evidence, the trial court's findings will not be disturbed. *Green v. State*, 615 S.W.2d at 707.

■ Even though he responded affirmatively that he had voluntarily signed a consent to search, Miles now argues that the consent was given only in response to a mere acquiescence to lawful authority. To support this contention, appellant relies on *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr. App.1985), but such reliance is misplaced because the present facts are distinguishable. In *Meeks*, the initial stop was held to be unlawful, and it was shown that 15 to 20 armed policemen and several patrol vehicles were in the immediate area. *Id.* at 508–510. As previously discussed, the initial stop in this case was valid, and no such show of force was present.

The evidence indicates that the trooper explained why the questions were being asked, and due to Miles' responses, the troopers wanted to look in the vehicle. The trooper handed the consent form to appellant and asked him to read it. Williams testified that the appellant "indicated that he was reading the consent" form and gave him the requested consent.

During the next 45 seconds (approx.), Williams and Miles discussed the barbecue business, the cold weather and how much stuff was in the trunk of appellant's car. The appellant never equivocated nor indicated any hesitancy to allow the search. Miles argues that he was never told that he could refuse to authorize the search or sign the consent form. Such a warning is not required nor essential. *Meeks v. State*, 692 S.W.2d at 510. Considering the totality of the circumstances and the evidence as viewed by the trial court, we cannot agree with appellant that the consent was derived through acquiescence to authority, and thus involuntary. The appellant's second point is overruled.

Since we have determined that both the initial stop and continued detention were lawful and that the consent was voluntarily given, we need not address appellant's third point relating to dissipation of taint.

Appellant has adopted and incorporated the same three sub-points into his second point of error regarding a violation of Article I, Section 9 of the Texas Constitution. For the same reasons set forth above, appellant's second point of error is also overruled, and the judgment of the trial court is affirmed.