

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00280-CR

———————————————

ALLEN CLAYTON ADAMS II, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1796241

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Allen Clayton Adams II appeals his conviction for intentionally giving a false or fictitious name to a peace officer after being detained. *See* Tex. Penal Code Ann. § 38.02(b). On appeal, Adams argues in a single issue that the trial court erred by overruling his motion to suppress certain evidence obtained during a traffic stop. We affirm.

### I. BACKGROUND

In September 2023, Euless Police Officer Patricio Favila pulled over a vehicle because its license plate was not readable and because its right taillight was out. The vehicle had two male occupants: the driver and Adams.

After Officer Favila initiated the traffic stop, the following timeline of events[1] transpired:

- (0:00–0:22): Officer Favila approached the stopped vehicle on its passenger side. The passenger window was cracked, and Officer Favila smelled marijuana.

- (0:22–1:43): Officer Favila explained to the driver why he had been pulled over and requested identification from the driver and Adams. Adams stated that he did not have an ID, but he identified himself as "Quincy Adams" and provided a date of birth of "03/31/92."

---

[1]Officer Favila was wearing a body camera that began recording when the driver pulled over. The timeline of events set forth herein is based on this body-camera recording as well as Favila's testimony during the hearing on Adams's motion to suppress.

- (1:44–4:47): Officer Favila returned to his police cruiser and attempted to identify Adams by running a computer check based on the information that Adams had provided, but Officer Favila could not get any results.

- (4:48–5:55): Officer Favila returned to the pulled-over vehicle and instructed Adams to write down his name, date of birth, and social security number. Adams wrote down the same name and date of birth that he had previously provided and wrote down a social security number beginning with the digits "221." When Officer Favila asked Adams where he was from, he stated that he was originally from Virginia. But Officer Favila knew that the social security number that Adams had provided was not consistent with his being from Virginia.

- (6:09–6:31): Officer Favila asked the driver and Adams about their travel details.

- (6:12–6:44): While Officer Favila was talking to the driver and Adams, Officer Timothy Graham arrived to back him up. Officer Graham instructed the driver to get out of the vehicle.

- (6:57–7:45): Officer Favila asked the driver how he knew Adams and whether the vehicle contained any drugs or other contraband. Officer Favila requested consent to search the vehicle, but the driver refused.

- (8:00–8:23): Officer Favila instructed Adams to get out of the vehicle and conducted a pat-down search.

- (8:43–9:05): Officer Favila ran the driver's information for a "narcotics investigation."

- (9:35–10:14): Officer Favila conducted a cursory visual search of the vehicle's interior.

- (10:18–11:10): Officer Favila returned to his police cruiser and unsuccessfully attempted to identify Adams by running a computer check on the information that he had written down.

- (11:20–12:11): Officer Favila returned to the pulled-over vehicle to continue his visual search. He spotted a grinder, which is commonly associated with marijuana, in the driver-side door. Based on his discovery of the grinder, he proceeded to search the entire vehicle, finding marijuana in the grinder and a syringe elsewhere in the vehicle.

- (12:14): Officer Favila placed the driver in handcuffs.

- (12:40): Officer Graham placed Adams in handcuffs.

Thus, the body-camera footage reflects that approximately thirteen minutes elapsed from the time that the driver pulled over to the time that Adams was placed in handcuffs.

When Officer Graham handcuffed Adams, he conducted a pat-down search and found a wallet containing Adams's driver's license. The driver's license confirmed that Adams had given Officer Favila a false name. Officer Favila ran Adams's information and confirmed that Adams had also given him a false social security number.

Adams was charged with intentionally giving a false or fictitious name to a peace officer and pleaded not guilty. Following a jury trial, he was convicted and sentenced to forty-five days in Tarrant County Jail. This appeal followed.

## II. DISCUSSION

In his sole issue, Adams argues that the trial court erred by denying his motion to suppress certain evidence obtained during the traffic stop. According to Adams, Officers Favila and Graham violated the Fourth Amendment by unnecessarily prolonging Adams's detention and by conducting an unlawful search of Adams's person. We disagree.

## A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Regardless of whether the motion was granted or denied, the prevailing party must be afforded the "strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). But we review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## B. Length of Detention

A police officer may lawfully stop a vehicle and briefly detain its occupants for investigative purposes if he has probable cause to believe that a traffic violation has

occurred. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc op. on reh'g). "During the detention, the officer may request information concerning the driver's license, ownership of the vehicle, the driver's insurance information, the driver's destination, and the purpose of the trip." *Lambeth*, 221 S.W.3d at 836 (citing *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd)). An officer may also conduct a computer check to determine whether the driver has any outstanding warrants, *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); conduct a pat-down search of the driver for weapons, *Lambeth*, 221 S.W.3d at 836 (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)); and request the driver's consent to search his vehicle, *id.* (first citing *Florida v. Bostick*, 501 U.S. 429, 435, 111 S. Ct. 2382, 2386 (1991); and then citing *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997)). A traffic-stop investigation is not fully resolved until the officer has completed the computer check and has confirmed that the driver has a currently valid license and no outstanding warrants and that the vehicle is not stolen. *Kothe*, 152 S.W.3d at 63–64. Generally, at this point, the detention must end, and the driver must be permitted to leave. *Id.* at 64.

However, in certain situations, a detention may be prolonged beyond the point when an officer has fully investigated the conduct that initiated the traffic stop. For example, a longer detention may be justified when (1) an officer has a reasonable

suspicion[2] that another offense has been or is being committed, *see Lambeth*, 221 S.W.3d at 836; (2) an officer needs to wait for backup to ensure his safety, *see Haas v. State*, 172 S.W.3d 42, 54 n.8 (Tex. App.—Waco 2005, pet. ref'd); or (3) the suspect contributes to the delay, *see U.S. v. Sharpe*, 470 U.S. 675, 688, 105 S. Ct. 1568, 1576 (1985).

Here, Officer Favila testified that he smelled marijuana as he approached the stopped vehicle. This gave him reasonable suspicion of criminal activity, and this reasonable suspicion justified his prolonging the detention. *See Glazner v. State*, 175 S.W.3d 262, 266 (Tex. Crim. App. 2005); *Taylor v. State*, 20 S.W.3d 51, 56 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Mohmed*, 977 S.W.2d at 628); *see also Lambeth*, 221 S.W.3d at 836. Officer Favila also testified that because he did not know if there were weapons in the vehicle, he waited for backup to arrive before continuing his investigation. This circumstance provided additional justification for prolonging the detention. *See Haas*, 172 S.W.3d at 54 n.8. Further, Adams contributed to the delay by

---

[2]"'Reasonable suspicion' exists if an officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Lambeth*, 221 S.W.3d at 836–37 (first citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; then citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); and then citing *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd)). To have a reasonable suspicion, an officer must have more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Id.* at 837 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000)).

providing a false name, which hindered Officer Favila's ability to positively identify him and complete a warrant check.[3] *See Sharpe*, 470 U.S. at 688, 105 S. Ct. at 1576.

Under these circumstances, we cannot conclude that the thirteen-minute stop was unreasonable or that Officer Favila failed to diligently pursue his investigation.[4] *See Sharpe*, 470 U.S. at 686–88, 105 S. Ct. at 1575–76 (concluding that twenty-minute detention was reasonable); *Love v. State*, 252 S.W.3d 684, 688 (Tex. App.—Texarkana 2008, pet. ref'd) (concluding that first twenty-five minutes of forty-five-minute time interval between initial stop and search of vehicle was not unreasonable where that period consisted of initial stop, questioning of defendant, radio confirmation of information given by defendant, second questioning of defendant concerning

---

[3]Because Officer Favila reasonably suspected Adams of criminal activity, he could detain him to determine his identity. *See McGee v. State*, No. 02-17-00347-CR, 2019 WL 165990, at *3 (Tex. App.—Fort Worth Jan. 10, 2019, no pet.) (mem. op., not designated for publication) ("A warrantless temporary detention of an individual by a police officer . . . is reasonable and constitutionally permitted if the officer reasonably suspects the individual of criminal activity." (first citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; and then citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000))); *see also Toles v. State*, No. 04-09-00531-CR, 2010 WL 4110564, at *2 (Tex. App.—San Antonio Oct. 13, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that officer was justified in investigating appellant's identity because he had been lawfully detained).

[4]Adams asserts that because the scent of marijuana gave Officer Favila probable cause to search the vehicle and its occupants, he violated Adams's Fourth Amendment rights by failing to initiate the searches immediately. But Adams cites no authority requiring an officer to conduct a search immediately upon the establishment of probable cause. *See* Tex. R. App. P. 38.1(i). Further, contrary to Adams's assertion, Officer Favila reasonably explained his decision not to conduct a search immediately upon smelling the odor of marijuana: he felt that he needed to wait for backup because he was unsure if there were any weapons in the vehicle.

8

inconsistencies raised by radio confirmation, and request to permit a search of defendant's vehicle); *Smith v. State*, 789 S.W.2d 350, 353 (Tex. App.—Amarillo 1990, pet. ref'd) (holding that twenty minutes was reasonable amount of time for all legitimate components of traffic stop to have been completed).

## C. Search Incident to Arrest

Adams further complains that the search of his person incident to arrest violated the Fourth Amendment because although the trial court found that Officer Graham initially arrested him for possessing drug paraphernalia, he was actually arrested for public intoxication, an offense for which Officer Graham purportedly did not have probable cause to make an arrest. But while the record supports Adams's claim that he was arrested for public intoxication, not the possession of drug paraphernalia, the trial court's denial of his motion to suppress was nevertheless correct because—contrary to Adams's assertion—Officer Graham had probable cause to arrest him for public intoxication. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) (holding that a trial court's ruling on a motion to suppress should be sustained "if it is reasonably supported by the record and is correct on any theory of law applicable to the case").

Adams's assertion that Officer Graham lacked probable cause to arrest him for public intoxication is not supported by the record. A person is guilty of public intoxication if he "appears in a public place while intoxicated to the degree that [he] may endanger [himself] or another" person. Tex. Penal Code Ann. § 49.02(a). The

9

record reflects that Officer Graham concluded that Adams was intoxicated and could potentially endanger himself because Adams admitted that he had been drinking and was too impaired to drive, he smelled of both alcohol and marijuana, he admitted to smoking marijuana earlier in the day, and he was near a street with a lot of vehicular traffic. Because Adams had admitted to being impaired, Officer Graham could not let him drive away from the scene, and Adams's level of intoxication combined with the high amount of traffic in the immediate area created the potential danger of Adams's being hit by a car if Officer Graham allowed him to walk away. Given these circumstances, Officer Graham reasonably could have believed that Adams was guilty of public intoxication; therefore, he had probable cause to arrest him.[5] *See Comeaux v. State*, No. 02-19-00432-CR, 2020 WL 7776637, at *4 (Tex. App.—Fort Worth Dec. 31, 2020, pet. ref'd) (mem. op., not designated for publication) ("Probable cause for a warrantless arrest exists if, at the time the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person to believe that the arrested person had committed or was committing an offense." (first citing *State v. Woodard*,

---

[5]In his briefing Adams argues that Officer Graham lacked probable cause to arrest him for public intoxication because he did not have reliable information that Adams was likely to endanger himself or others. But as the State points out, the public-intoxication statute does not require a *likelihood* of danger; rather, it requires only the *potential* for danger. *See* Tex. Penal Code Ann. § 49.02(a); *State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) ("As for the element of danger, it is sufficient that the person merely rendered himself or others subject to *potential* danger." (emphasis added)).

341 S.W.3d 404, 412 (Tex. Crim. App. 2011); and then citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)))).

Further, even if Officer Graham had not had probable cause to arrest Adams for public intoxication, the smell of marijuana emanating from Adams's person would nevertheless have given Officer Graham probable cause to search him. *See Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.) ("The odor of mari[jua]na alone is sufficient to constitute probable cause to search a defendant's person, vehicle, or objects within the vehicle."); *see also Isaac v. State*, 675 S.W.3d 116, 119 (Tex. App.—San Antonio 2023, no pet.) (holding that even though industrial hemp has been legalized in Texas, the smell of marijuana can nevertheless "be part of the totality of the evidence supporting probable cause"); *Cortez v. State*, No. 05-21-00664-CR, 2022 WL 17817963, at *7 (Tex. App.—Dallas Dec. 20, 2022, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's argument that "because marijuana and hemp come from the same plant . . . [and] are impossible to distinguish by smell," the odor of marijuana "is insufficient by itself to establish probable cause to search" and concluding that odor of marijuana emanating from appellant's vehicle gave officer probable cause to search the vehicle and its occupants). Indeed, Officer Graham testified that he would have searched Adams regardless of the public-intoxication arrest because he smelled of marijuana.

In sum, because Officer Graham had probable cause to arrest Adams for public intoxication and because the odor of marijuana established probable cause to

search Adams for evidence of illegal drug activity, Graham's search did not violate the Fourth Amendment.

**D. Disposition of Adams's Sole Issue**

Having concluded that Officers Favila and Graham did not unnecessarily prolong Adams's detention or conduct an unlawful search of Adams's person—and therefore did not violate the Fourth Amendment—we likewise conclude that the trial court did not err by denying Adams's motion to suppress. Accordingly, we overrule Adams's sole issue.

### III. CONCLUSION

Having overruled Adams's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 15, 2025

12